### INFORMATION *against* OLIVER.

#### SAME *against* SAME.

#### SAME *against* SAME.

#### SAME *against* SAME.

1. Where, in an information in the City Court of Charleston for doing business without the prescribed license, it substantially appeared that the proceeding was in the name of the State, the objection that there was no plaintiff was properly overruled.
2. The proper time to object to evidence is when it is offered.

3. An ordinance of the City Council of Charleston may, without proof, be brought to the attention of the municipal courts of that city.

4. Under information for carrying on a business without the license required by a city ordinance, the prosecuting attorney proved that defendant had carried on such business, but did not prove that defendant had no license. *Held,* That defendant was properly convicted, the burden of proof as to the license being on him.

5. An act of the legislature authorizing a municipal corporation to impose a license tax upon business occupations does not violate sections 12, 14, or 41, of article I., nor section 33 of article II. of the constitution of this state.

Before PRINGLE, Recorder, Charleston, July, 1883.

The opinion fully states the four cases.

*Mr. W. M. Thomas,* for appellant.

*Mr. Geo. D. Bryan,* contra.

June 26, 1884.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN : These were informations in the City Court of Charleston for alleged violations of ordinances of the city, two for carrying on the business of publishing a newspaper and the other two for carying on the business of a job hand printer, without having paid the license required therefor. The cases involving the same points were heard together, and will be so considered, what is said in one being understood as applying to all the cases.

The report of the recorder was follows :

"STATE OF SOUTH CAROLINA, ⎫
    County of Charleston,         ⎬ *In the City Court.*
    City of Charleston.          ⎭

"At a stated term of the City Court, of the city of Charleston, for the city of Charleston, begun and holden on the first Monday of September, in the year of our Lord one thousand eight hundred and eighty-two, Geo. D. Bryan, corporation counsel for the city of Charleston, comes into court here, and upon his oath of office, gives said court to understand and be informed, that W. J. Oliver, late of the city of Charleston, state aforesaid, on the 28th

day of February, in the year of our Lord one thousand eight
hundred and eighty-two, and on divers other days in said year at
Charleston, in said state of South Carolina, and within the juris-
diction of this court, was the publisher of a newspaper worked by
hand, and unlawfully did carry on the business of publishing a
newspaper worked by hand without having paid the license tax
therefor, imposed by the ordinance of the city of Charleston,
entitled 'An ordinance to regulate licenses for the year 1882,'
ratified the 27th day of December, A. D. 1881, as in that behalf
required by the said ordinance, contrary to the said ordinance,
and against the peace and dignity of the state of South Carolina.

"G. D. BRYAN,

"*Corporation Counsel City of Charleston.*"

Indorsed:

"THE STATE OF SOUTH CAROLINA  } *In the City Court.*
Charleston County, City of Charleston.

"On hearing the above information, and on motion of G. D.
Bryan, corporation counsel,

"*It is ordered,* That the same be filed and the case fixed for trial
on the first Monday of November, A. D. 1882, at 10 o'clock a. m.,
and that a copy of said information and this order be forthwith
served upon the said W. J. Oliver.    October 14, 1882, W.
Alston Pringle, recorder,    *   *   *   *    The case was finally
fixed for trial on July 2, 1883, and was tried before a jury em-
pannelled and sworn according to law.    The corporation counsel,
in proving his case to the jury without objection, read the follow-
ing sections of an ordinance, entitled 'An ordinance to regulate
licenses for the year 1882' :

"*Section 1. Be it ordained* by the mayor and aldermen of the
city of Charleston, in city council assembled, That every person,
firm, company, or corporation engaged in, or intending to engage
in, any trade, business, or profession hereinafter mentioned, shall
obtain, on or before the 20th day of January, A. D. 1882, a
license therefor, in the manner hereinafter prescribed.    Any per-
son, firm, company, or corporation, commencing business after the
said 20th day of January, A. D. 1882, shall obtain a license
therefor before entering upon such trade, business, or profession.

"Sec. 3. If any person or persons shall exercise or carry on any trade, business, or profession, for the exercising, carrying on, or doing of which a license is required by this ordinance, without taking out such license as in that behalf required, he, she, or they shall, besides being liable to the payment for the license, be subject to a penalty equal to *fifty per cent.* of the amount required to be paid for the license, to be sued for and collected in this city court, or any other court of competent jurisdiction, or to imprisonment not exceeding thirty days, as may be adjudged by the recorder or court trying the case.

"Sec. 11. Class 54. Papers worked by hand, $25.

"The corporation counsel examined O. R. Levy and Sol Blank, who testified as to the defendant publishing the newspaper called the 'Charleston Mercury,' and put in evidence copies of the said newspaper (of dates August 3, 1882, September 13, 1882, December 11, 1882, November 9, 1882, and August 12, 1882,) in all of which the name of W. J. Oliver was published and appeared as editor and manager. No evidence for the defendant. I therefore charged the jury that this was a question of fact, which remained with them to determine. That if from the evidence they found that the defendant did publish a newspaper worked by hand without a license, they would find him guilty, otherwise not guilty. The jury found a verdict of guilty.

"On the 7th of July, 1883, the defendant, through his counsel, moved for arrest of judgment and for a new trial, both of which were refused and the defendant sentenced 'to pay the sum of thirty-seven dollars and fifty cents, or thirty days in jail—county jail of Charleston, &c.

"(signed)        W. ALSTON PRINGLE,
                               "*Recorder.*"

From this sentence the defendant appealed to this court upon the following grounds: "1. There was no plaintiff. 2. Because the city ordinance was not proved. 3. Because the defendant was not proved 'not to have paid' for a license, or to have received none. 4. Because this license law is unconstitutional as in violation of article 1, sections 12 and 14, of the state constitution. 5. Because the information being lodged in 1883 and the offences

alleged in 1882, another remedy was provided by the city ordinances. 6. Because the defendant having already been tried by a jury for these offences, and verdicts rendered, he cannot be tried a second time. Exceptions *five and six* were properly abandoned in the argument here.

First. It is claimed that there was no plaintiff. This objection goes more to the form than the substance. The proceeding was in the City Court of Charleston in a case arising under an ordinance of the City Council. In such case the City Council and the recorder have the right to regulate the practice under section 2131 of the *General Statutes*, which provides as follows: "It shall be lawful for the City Council and the said recorder to prescribe, and from time to time to regulate, the practice of the said court, and of the attorneys therein, conformably to this chapter, and as nearly as may be to the forms and rules used in the Circuit Courts of this state, and the proceedings shall be the same substantially in like cases, except in cases for the violation of ordinances when imprisonment is imposed in addition to, or in the alternative of, a fine, in which cases the prosecution shall be in the form of an information on the official oath of the corporation counsel." In accordance with the above provision this was an "information on the official oath of the corporation counsel."

An information is the declaration of the charge or offence against any one at the suit of the king, filed by a public officer, without the intervention of a grand jury. *State v. Starling*, 15 *Rich.*, 132. Although the title of the information was not endorsed on the information, there can be no doubt that it was in the name of the state. The information both commences and ends in the name of the state, and sets forth that the offence charged was "against the peace and dignity of the state of South Carolina." It has been held with reference to a writ of *venire*, which must issue in the name of the state, that "if it anywhere appears in the writ that it issued in the name of the state, there is a sufficient compliance with the constitutional requirement; and surely the mere location of the words upon the paper can have no special virtue. Nor can the addition in the caption of the words 'county of Spartanburg' impair the validity of the

mandate, for they may well be regarded as mere surplusage." *State* v. *Hill,* 19 *S. C.*, 441; *State* v. *Gilreath, Ibid,* 603.

Second. The point is made that the city ordinance was not proved. In presenting the case to the jury, it was read without objection. The proper time to make objection is when evidence is offered. *Burris* v. *Whitner,* 3 *S. C.*, 510. Besides, this pro-ceeding was in the City Court of Charleston, and in that court it was no more necessary to offer proof of a public ordinance, under the seal of the city council, than in the courts of the state to prove a public act of the legislature. Municipal ordinances are private laws when brought before the superior judiciary of a state, but not when brought before a city court. 1 *Whart. L. Evid.,* § 293.

Third. Objection is made that it was not shown affirmatively that the defendant had not paid for a license, or had not in fact received one. There is no complaint as to the charge of the recorder. Upon the proof that the defendant had been engaged in the business as alleged, and nothing being offered by the defendant by way of defence, the recorder submitted the case to the jury with the remark "that it was a question of fact for them to determine; that if from the evidence they found that the defendant had published a newspaper, worked by hand, without a license, they would find him guilty; otherwise, not guilty." Under this charge, the jury found that he had published the paper *without a license;* and his motion for a new trial was refused. It is simply a question as to the sufficiency of proof upon a point of fact, which, as often ruled here, this court in a law case has no right to consider.

It is urged, however, that it appears that there was no proof whatever upon one of the main allegations of the information, and therefore the conviction must necessarily have been illegal. Can it be properly said that there was no proof in view of the presumption allowable from the character of the fact itself and the conduct of the defendant? It will be observed that the alle-gation is negative in form, that there was no regular issue in the case, that the defendant did not formally plead to the informa-tion, made no denial, and offered no proof. The information con-tained two allegations: that the defendant had carried on the

business, and that he had not paid the license tax. The first was proved, and the defendant did not prove that he had paid the tax and taken a license.

Under these circumstances, upon whom was the *onus* of making the proof upon the subject? Was it on the state to prove that the defendant had not paid the tax, or upon the defendant, if the fact were .so, to prove that he had paid it? The general rule certainly is, that he who affirms must prove, and that one is not required to prove a negative. It is true there are certain exceptions to this rule, in which the proposition, though negative in its terms, must be proved by the party who states it, and notably .in that class of cases in which the plaintiff grounds his right to recover upon a negative allegation, where of course the establishment of this negative is an essential element in his case. But even in this class of cases, Mr. Greenleaf says, "it is obvious that plenary proof on the part of the affirmant can hardly be expected, and therefore it is considered sufficient if he offer such evidence as, in the absence of counter-testimony, would afford ground for presuming that the allegation is true," &c..

But even this exception does not embrace that precise class of cases to which this belongs. "But when the subject matter of a negative averment *lies peculiarly within the knowledge* of the other party, the averment is taken as true unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any person, except those who are duly licensed therefor: as .for selling liquors, exercising a trade or profession, and the like. Here the party, if licensed, can immediately show it without the least inconvenience; whereas if proof of the negative were required, the inconvenience would be very great." 1 *Green. Evid.*, § 79. Among the many cases cited in the margin to sustain the proposition is one from our own state, that of *State* v. *Geuing*, 1 *McCord*, 574, where the precise point was held that "on an indictment for retailing spirituous liquors without license, the state need not prove that the defendant had not a license, as the defendant must prove he had one," &c.

Fourth. This exception raises the question that the act of the General Assembly,. under which the license ordinance of the City

Council was passed, is in violation of section 12, article I., of the state constitution, which declares that "no person shall be prevented from acquiring, holding, and transmitting property," &c. Also of section 14 of the same article, which declares that "no person shall be deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land," &c. Also of section 41 of the same article, which declares that "the enumeration of rights in this constitution shall not be construed to impair others retained by the people, and all powers not herein delegated remain with the people," &c. And also of section 33, article II., which declares that "all taxes upon property, real or personal, shall be laid upon the actual value of the property taxed, as the same shall be ascertained by an assessment made for the purpose of laying such tax," &c.

This certainly opens a very wide field. These are all important provisions of the constitution, but every point now made has been already considered and decided by this court, and we think it could result in no good to open the argument and renew the discussion. It concerns the interest of all that the law and its interpretation should be settled. In the case of *State* v. *Hayne*, 4 *S. C.*, 403 (1872), after full and careful consideration, it was decided that "a tax on professions or avocations is not forbidden by the constitution of this state either in terms or by implication; and that for the non-payment of a tax on business, a penalty may be imposed to be recovered by an indictment as for a misdemeanor."

In the case of *State* v. *Columbia*, 6 *S. C.*, 1 (1874), it was held that the legislature is not forbidden by the constitution from empowering municipal corporations to enforce taxes on business and avocations and to fix a different rate for each distinct class of persons subject to the tax. That whatever in this regard the state herself could do, she might authorize a municipal corporation to do within its limits. In this case, no doubt has been suggested that the act of the legislature, if constitutional, does not fully authorize the ordinance of the City Council, under which these proceedings were instituted.

Then followed the case of *Charleston* v. *Oliver*, 16 *S. C.*, 50 (1881), which being against this same defendant, recognized and

followed the cases of *Hayne* and the *City of Columbia*, above referred to, in the doctrines therein announced. The court say: "The general question of the power of the legislature to impose a license tax has been conclusively settled in the case of *State* v. *Hayne*, 4 *S. C.*, 403, where most of the constitutional objections raised in this case were considered and disposed of. This case was followed by that of *State* v. *Columbia*, 6 *S. C.*, 1, in which it was held that the legislature could empower a municipal corporation to impose a license tax on persons, following particular callings, or pursuing particular occupations, within the corporate limits of such municipality. So that we consider that many of the constitutional questions raised by the appellant in these cases have already been adjudicated, and it is only necessary for us to refer to the cases in which these questions were determined."

It is true that it was held in that case that the act of the legislature, under the supposed authority of which the ordinance then under consideration was passed, did not authorize the municipality to impose a license tax on occupations, and upon that ground alone the judgment was set aside. But since that time the act of 1881 (17 *Stat.*, 582) has been passed, which is free from the constitutional objection that prevailed in that case, and which by its terms undoubtedly authorizes the City Council to pass such an ordinance. By authority of this latter act the ordinances of 1882 and 1883 imposing a license tax were passed, and the penalties now claimed in the information were incurred for alleged defaults subsequently made. We cannot see that any of the constitutional objections made can avail the defendant in refusing to pay the license tax imposed by the city authorities.

The judgment of this court is that the judgment of the recorder of the City Court be affirmed, and that the same judgment be regarded as entered in each of the three other cases stated in the caption herein.