ISAAC BYER v. HARRY J. HARRIS, ONE OF THE POLICE JUSTICES OF THE CITY OF TRENTON.

Argued November Term, 1908—Decided February 23, 1909.

1. A police justice of the city of Trenton has jurisdiction to try persons charged on oath with violating an ordinance of the board of excise commissioners of that city.

2. A police justice holding a municipal court can take judicial notice of the ordinance passed by the common council creating the board of excise commissioners.

3. Testimony by a witness who styled himself the assistant clerk of the board of excise—the clerk of that board being the city clerk and the witness his assistant—that a book he produces is the book containing all the ordinances of the board of excise, and that the clerk is the custodian of the book, was sufficient *prima facie* proof of the ordinances contained in the book.

4. There being an office of police justice, and a person sitting as police justice, a judgment rendered by such officer cannot be challenged on the ground that it was not proved that the common council had assigned him to hold court at the time of trial, or had fixed his term of office.

On *certiorari.*

Before Justices REED, BERGEN and MINTURN.

For the prosecutor, *William M. Jamieson* and *Erwin E. Marshall.*

For the defendant, *Charles E. Bird.*

The opinion of the court was delivered by

REED, J.   One Joe Pascale, on July 30th, 1908, complained on oath before Harry J. Harris, a police justice of the city of Trenton, that Isaac Byer, a licensed saloonkeeper in the city of Trenton, on Sunday, July 26th, did, in his saloon, sell and deliver to the said Joe Pascale two glasses and a half-pint bottle of whiskey, in violation of section 24 of the ordinance passed by the board of excise commissioners of the city of Trenton, by reason of which he became liable to pay a penalty of $100.

Upon the trial of the prosecutor under this complaint, he was convicted and attached to pay a fine of $100.

The first ground assigned for reversal is that the police justice had no jurisdiction to hear the complaint.

The board of excise was created under the provisions of the act of 1902. *Pamph. L., p.* 628. The act itself prescribes the power of the board when created by ordinance. It empowers the board of excise commissioners to make ordinances, to license and regulate or prohibit inns and taverns, &c., and to prescribe and enforce a penalty or penalties either by fine or imprisonment for the violation of such ordinances, which said penalties shall be enforced or collected by the said board of excise commissioners in the same manner as any other penal- ties are enforced or collected in such city.

It will be observed that the language employed in this act of 1902, in respect to the enforcement and collection of penalties, is substantially a transcript of the language of the act for establishing boards of excise. *Pamph. L.* 1886, *p.* 397. In that act the penalties prescribed by the board are to be en-

forced in the same manner as any other penalties which are enforced in the particular city.

In the case of *Miller* v. *Camden,* 34 *Vroom* 501, the question of the jurisdiction of a recorder of the city of Camden to hear and determine complaints of the violation of excise ordinances in that city, came before the Supreme Court. Mr. Justice Gummere, now Chief Justice, said: "By section 1 of 'The act establishing boards of excise in the various cities of this state' (*Pamph. L.* 1886, *p.* 397) power is conferred upon such boards to make, amend or repeal ordinances and by-laws to license and regulate or prohibit inns, taverns and beer saloons, and to prescribe and enforce penalties for the violation of such ordinances, and such penalties are to be enforced 'in the same manner as any other penalties are enforced in any such city.' In order, therefore, to determine the question whether the authority conferred by the board of excise of Camden upon the recorder was within its power, it is only necessary to turn to the charter of that city and ascertain whether the recorder was clothed with power to try parties charged with violating other municipal ordinances and to impose penalties therefor. An examination of the forty-fourth section of the charter discloses that such power is conferred upon him in express terms. *Pamph. L.* 1871, *p.* 234."

So, in the present case, as the enforcement of the ordinances by the board of excise commissioners of the city of Trenton are to be in the same manner as other penalties are enforced in the city of Trenton, we turn to the charter of the city to ascertain whether the police justice is clothed with power to hear complaints respecting the violation of municipal ordinances.

On turning to the charter of the city of Trenton (*Pamph. L.* 1874), we find in section 45 that "Every police justice shall be empowered, on oath, &c., that any person has been guilty of the violation of any of the ordinances of the said city, to issue his warrant against the person charged, which warrant shall be returnable forthwith; * * * that the justice shall proceed to hear testimony to determine and give judgment in the matter without filing any pleadings," &c.

Thus the power conferred upon the police justices in this section of the charter of the city of Trenton is quite as extensive as the power conferred upon a recorder in section 44 of the charter of the city of Camden.

But it is insisted that a police justice has no power other than that possessed by a justice of the peace. This contention is based upon the language of section 43 of the charter of the city of Trenton, which provides that every police justice shall be entitled to exercise a like authority and jurisdiction in all criminal matters and complaints arising in the city of Trenton, as the justices of the peace in and for the several counties of this state are, or may be, by law entitled to use and exercise, and section 44 which provides that all proceedings before any police justice shall, as nearly as may be, be regulated by the provisions of and conducted in the manner prescribed in and by an act entitled "An act constituting courts for the trial of small causes."

But it is to be observed that section 43 deals only with the jurisdiction of police justices in all criminal matters, and therefore does not modify section 45 which confers upon police justices power to try violations of any of the ordinances of the city.

It is to be further observed that section 44 directs that proceedings before a police justice shall be conducted as proceedings in justices' courts, unless when otherwise directed. In section 45 there is an express direction as to the method of procedure before police justices in hearing complaints for the violation of any such ordinances.

Again, it is insisted that under the act of 1902, the penalties for violating any of the ordinances of the board of excise shall be enforced and collected by said board of excise commissioners, and that there is no evidence that the proceeding in this case was at the instance of the board of excise commissioners. The same provision is in the act of 1886, *supra.*

This provision, however, does not mean that the board itself must make the complaint, or appear at all as a party in the proceeding. What it does mean is, that they shall see that the penalties for the violations of their ordinances are enforced.

The manner of enforcing them is, upon the oath of any person that the ordinance has been violated, followed by a summary trial, as provided for in section 45. The presumption is that the proceeding is under the supervision of the board of excise.

It is again assigned as a reason for reversal that the ordinance of the common council creating the board of excise commissioners was not proved.

No doubt the existence of the ordinance creating the board of excise commissioners was the foundation for the proceeding, and the title of that ordinance and the section alleged to have been violated was set out in the complaint. This ordinance being one passed by the common council, the police justice, holding the municipal court, could take judicial notice of it. 16 *Cyc.* 898; *Hankinson* v. *Trenton,* 22 *Vroom* 495.

It is again insisted that the ordinance by the board of excise under which the complaint was made was not proved. Of this ordinance, under the doctrine in *Hankinson* v. *Trenton, supra,* the police justice could not take judicial notice, and it was essential that it should be proved. The contents of the ordinance appears in the stipulation of counsel, and if proved to exist it is stipulated that it was regularly introduced and passed. The insistence is that it was not proved, because the witness who produced the book of ordinances had no official position. The clerk of the city of Trenton is clerk of the board of excise commissioners, but it is said that there is no such person as assistant city clerk, and no such officer as assistant clerk of the board of excise commissioners.

The book of ordinances was produced before the police justice, but the prosecutor insists that because it was not produced by the clerk of the board of excise commissioners the attempt to prove the existence of the ordinance was ineffectual.

The preliminary proof required to admit a record of an ordinance is that the book comes from the proper officer, from the proper custodian, and is attested and identified. 2 *Ell. Evid.,* § 1304.

To the same point see cases of *Tipton* v. *Norman,* 72 *Mo.* 380; *Barr* v. *Auburn,* 81 *Ill.* 361; *State* v. *King,* 37 *Iowa* 462.

In this case the book of ordinances of the board of excise commissioners was produced by a witness who styled himself the assistant clerk of the board. He testified that his principal was the custodian of the minutes of the board; that the book was the book of ordinances of the excise commissioners; that the book contained all the ordinances passed by the board of excise commissioners up to 1907.

We think there was proof that the book came from the custody of the proper officer, and that there was *prima facie* proof of the existence of the ordinance, the contents of which is shown by the stipulation.

It is again insisted that there should have been proof that the mayor had designated the police justice to sit during the month in which the trial occurred, in accordance with section 44 of the Trenton city charter, and that there should have been proof that the common council had fixed the terms of the police justices, prescribing their duties and time and place of holding police court in said city, according to the provisions of the act of 1891. *Gen. Stat., p.* 2494.

Aside from any other answer to these contentions, it appears that there was an office of police justice, and that there was a person who tried the cause while sitting as a police justice. Whether he was authorized to hold the court at that particular time, or at all, was of no moment in this proceeding, as he was a *de facto* magistrate, whose proceedings cannot be attacked in this way in these proceedings. *Mech. Pub. Off.,* §§ 329, 330; *State* v. *Carroll,* 38 *Conn.* 449.

The judgment brought up should be affirmed.