Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of BERNARDINA ROBERTO, Respondent, for Compensation to Herself and Children under the Workmen's Compensation Law for the Death of Her Husband, GENEROSO ROBERTO, *v.* JOHN F. SCHMADEKE, INC., Employer, and THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Insurance Carrier, Appellants.

Third Department, November 14, 1917.

**Workmen's Compensation Law — when retail coal dealer not engaged in "employment" of "storage" within meaning of group 29 of section 2 of statute.**

Where a retail coal dealer operating a plant consisting of three buildings or pockets containing twenty-eight compartments for different kinds of coal, having a capacity of between 10,000 and 12,000 tons, is not holding his stock or any part thereof with reference to any future requirements of the market or business contingency, but is endeavoring to sell the same to his customers and is immediately offering and exposing the same for sale in the ordinary course of his business, said dealer is not engaged in the "employment" of "storage" within the meaning of group 29 of section 2 of the Workmen's Compensation Law.

Hence, a claim for the death of an employee of said dealer, injured prior to the amendment of 1917 to group 19 of section 2 so as to include coal yards, while moving coal from the corners of one of the pockets into the center where it could fall into the chute and be loaded, should be dismissed.

KELLOGG, P. J., dissented.

APPEAL by the defendants, John F. Schmadeke, Inc., and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 2d day of June, 1917.

*Nadal, Jones & Mowton* [*Edward P. Mowton* of counsel], for the appellants.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

COCHRANE, J.:

The employer conducts a large retail coal business at a plant covering practically a city block in Brooklyn, N. Y. The plant consists of three buildings or pockets, containing twenty-eight compartments for different kinds of coal. The

maximum capacity of the plant was between 10,000 and 12,000 tons. The employer bought coal and retailed it as fast as possible. The smallest deliveries averaged between 700 and 800 tons a day, and the largest deliveries were 1,200 tons a day. Among the findings of the Commission are the following: " As fast as the coal was sold, the stock was replenished. When business was brisk the pockets were pretty nearly filled. If the market was right, they [the employer] would store in the summer coal for their winter supply, which coal would be sold in winter. At the time of the accident the scarcity of coal required them to get the coal out of the corners of the pockets." The accident happened December 15, 1916. The Commission finds that the employee " was required to enter a coal pocket or compartment in order to trim or move some coal from one portion of a bin to another portion, so that the coal would run by gravity down a chute." This was because the supply of coal was well nigh exhausted and it had to be " trimmed " or moved from the corners of the pocket to the place where the chute was so that it would run down the chute into automobile trucks for delivery to customers. While walking along a corridor around the pocket, the employee fell, sustaining injuries which resulted in his death.

The Commission has found that the employer " was engaged in the business of storage of coal within the meaning of group 29 of section 2 of the Workmen's Compensation Law." That group includes " storage of all kinds and storage for hire." (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], § 2, group 29, as amd. by Laws of 1916, chap. 622.) The accident happened before the Legislature by the amendment of 1917 (Chap. 705) amended group 19 of section 2 so as to include coal yards.

I am unable to see how this award can be sustained unless we are prepared to hold that every merchant and country storekeeper in carrying his ordinary supply and stock of goods is engaged in the storage business. The farmer who deposits his grain in the barn until such time as in the natural and ordinary course of events he would market the same; the merchant who purchases the grain from the farmer and temporarily deposits the same in some convenient place until opportunity presents itself to sell the same to a customer in the ordinary and natural routine of business; the miller

who receives the grain from the merchant and keeps it in his mill for a day or two until the natural exigencies of his business permit him to grind it into flour; the manufacturer who buys a commodity and has it in his factory with a view to using it or transforming it into the manufactured product; are all engaged in the storage business within the meaning of group 29, if the employer in this case was so engaged. It is true that the employer was conducting a large and extensive business, but it is not the size or magnitude of the business which is controlling, but the manner in which it is conducted. The method pursued by this coal dealer was precisely that which exists in the ordinary coal yards of the cities and villages of the State. If a merchant purchases a stock of goods in excess of his immediate requirements and holds the same for an advance in price, or for any reason does not expose or offer the same for immediate sale, he perhaps to that extent engages in the storage business within the meaning of group 29. But if his stock of goods is on hand for present sale at the prevailing prices, and is immediately offered and exposed for sale, I cannot think that such stock of goods is being stored merely because the thrift and prudence of the merchant prompts him to have on hand a sufficient supply to meet the most pressing demands which may be made. In this case it has been found that if the market was right the employer " would store in the summer coal for their winter supply, which coal would be sold in winter." Perhaps to that extent and in that respect the employer was engaged in storage within the meaning of group 29. But that need not be determined because it has no application or relation to this accident. There had been a scarcity of coal since the previous October and at the time of the accident the supply was nearly exhausted, so much so that the work which the deceased was proceeding to do consisted in " trimming " or moving the coal from the corners of the pocket out into the center of the pocket where it could fall into the chute and be loaded onto the trucks. In fact the finding of the Commission is: " At the time of the accident the scarcity of coal required them to get the coal out of the corners of the pockets." There was, therefore, no hoarding

or storage of coal at the time of the accident. There can be no contention that the employer at that time was carrying a larger supply than the immediate demands and requirements of the business made appropriate. There was not on hand a single pound of coal which the employer would not have sold at any moment to any customer in the usual course of the business. Definitions are sometimes vague and unsatisfactory and the definitions of the term " storage " as given by lexicographers are not conclusive in discovering the legislative intent, but may be helpful in doing so. I think the underlying idea of those various definitions is that of permanently keeping or holding goods to await some future contingency, and that the term is not properly applied to merchandise which a merchant has on hand for immediate sale and disposition. The legislative intent is controlling and the problem is to discover that intent. The expression " storage of all kinds and storage for hire " of course implies that if an employer is storing his own property he may be engaged in a " hazardous employment." But the question in this and other similar cases is to determine under what circumstances the employer is engaged in the " *employment* " of storing his own property. It is of course impossible to enunciate a rule applicable to all cases. Each case as it arises must largely be determined with reference to its own facts. It may be difficult in some cases to draw the line of demarcation. It seems quite clear, however, that in a case like the present where a merchant is not holding his stock of goods or any part thereof with reference to any future requirements of the market or business contingency, but is endeavoring to sell the same to his customers and is immediately offering and exposing the same for sale in the ordinary course of his business, such a person is not engaged in the " employment " of " storage." (See, also, *Walsh* v. *Woolworth Co.*, 180 App. Div. 120, decided herewith.)

The award should be reversed and the claim dismissed.

All concurred, except KELLOGG, P. J., who dissented for the reasons stated in his memorandum in *Kronberger* v. *Harlem Bottle Co.* (181 App. Div. 900), decided herewith.

Award reversed and claim dismissed.