## SOUTHERN RY. CO. v. STEARNS BROS., Inc.

Circuit Court of Appeals, Fourth Circuit. October 16, 1928.

No. 2741.

John M. Robinson, of Charlotte, N. C. (S. E. Vest, of Charlotte, N. C., on the brief), for appellant.

Edward M. Land, of Statesville, N. C. (Turner & Turner, of Statesville, N. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and SOPER, District Judge.

PARKER, Circuit Judge. This was an action at law instituted by Stearns Bros., Inc., hereafter called the plaintiff, against the Southern Railway Company, hereafter called defendant, to recover for damage alleged to have been done to an asphalt paving plant of plaintiff located on defendant's right of way. The complaint alleged that the paving plant was located near the track of defendant at Kings Mountain, N. C., and that while shifting cars nearby defendant's servants negligently kicked two cars against the plant in such way as to cause considerable damage. The answer, in addition to denying negligence, alleged that the property which was damaged had been placed on the right of way under a lease contract which provided that it should be so placed at the risk of plaintiff, and that defendant should be exempted from liability for damage done thereto, whether same should result from the negligence of defendant or otherwise. There was a finding by the jury that the property was damaged by the negligence of the defendant as alleged, but that defendant was not guilty of gross negligence, and fixing the damages at $4,500. Upon this verdict judgment was entered for plaintiff, and defendant has appealed.

The principal question presented is whether, upon the contract as admitted, a verdict should have been directed for defendant, and, in the view which we take of the case, this is the only question which we need consider. It appears that the contract in question was executed between the defendant and the Globe Indemnity Company, a corporation which had taken over a road paving contract at Kings Mountain. The indemnity company subsequently entered into a contract with plaintiff to complete the paving which it had taken over, and assigned to plaintiff the contract of lease obtained from defendant. It is stipulated that plaintiff "took over said lease as the assignee thereof, and, at the time of the injury and damage complained of, was occupying the portion of the right of way of the Southern Railway Company in question as the assignee of said lease, being entitled to its rights and privileges, and subject to its obligations, in the same way and manner as if it had been the original lessee named therein."

The contract of lease provided that, in consideration of an annual rental of $60, defendant gave the right or license "to occupy and use, for the storage of paving materials and machinery," a certain strip of its right of way at Kings Mountain. It stipulated that the licensee should pay all taxes, licenses, or other charges "upon the business or property conducted, placed, or maintained by the licensee" upon the premises, and contained the following provision, which is the one relied upon by defendant, viz.:

"5. That the licensee accepts the privilege hereby granted with the full knowledge and understanding that any property stored by or with the consent of the licensee upon said right of way is subject to the risk of destruction or damage by fire set out by locomotives operated on the railroad of the railway company, or may be otherwise damaged or destroyed, or may be stolen, and agrees, in consideration of this privilege, that the privilege

is to be used and enjoyed solely at the risk of the licensee, and that the railway company shall not be responsible to the licensee or others for any such loss, injury, or damage, whether the same results from the negligence of the railway company or otherwise."

The plaintiff erected a concrete mixing plant upon the portion of the right of way leased from defendant and was engaged in operating it when it sustained the damage complained of. While admitting the execution of the contract, and that it is bound by the provisions thereof, plaintiff contends that these do not exempt defendant from liability for the damage, contending in the first place that the machinery was being operated, and was not "stored," within the meaning of the exempting clause of the contract; and, in the second place, that the exemption from liability extends only to damage caused by fire. We think, however, that neither of these positions is sound and that upon the admitted facts verdict should have been directed for defendant.

It is well settled that a railroad company cannot contract against liability for its negligence with respect to the performance of its duty as a common carrier. This rule has no application, however, to contracts by which it leases portions of its right of way for uses not connected with the discharge of its duty as such carrier. The public has no interest in such contracts, and a provision that the railroad is not to be held liable for negligence resulting in damage to property placed upon the leased premises is not void as being contrary to public policy. This is the holding not only of the federal courts, but also of the courts of North Carolina, by whose public policy the validity of the contract is to be governed. Slocumb v. Raleigh, etc., Ry. Co., 165 N. C. 338, 81 S. E. 335; Godfrey v. Western Carolina Power Co., 190 N. C. 24, 128 S. E. 485; Hartford Fire Ins. Co. v. Chicago, etc., R. Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; Santa Fé, etc., R. Co. v. Grant Brothers, 228 U. S. 177, 33 S. Ct. 474, 57 L. Ed. 787.

We are not impressed with the argument that the exemption from liability does not apply because the machinery damaged was being operated, instead of being merely "stored," on the property. The contract must be construed as a whole, and in the light of the purpose for which it was made; and, when so construed, there can be no doubt that the intention of the parties was that the land leased should be used for the purpose for which it was being used at the time of the occurrence complained of, and that de-

fendant should not be held liable for damage done to property of plaintiff placed thereon under the contract, even though such damage should be caused by the negligence of defendant.

It is perfectly clear that the word "stored" was not used in the contract in the limited and technical sense of being "kept for safe custody." The lessee had a paving contract on its hands. It desired a place where it could set up its machinery for mixing paving material near the road to be paved and near the track of the railroad which would haul in the material. A place for mere "storage" was not what was needed, and furthermore an open lot manifestly would not have been selected for the "storage" of machinery. That "storage" in the strict sense was not what was contemplated appears, also, from the provision of the contract which required that the lessee pay all taxes, licenses, or other charges upon the business or property "conducted, placed, or maintained" upon the leased premises. And, if further proof were needed that the word "storage" was not used in the contract in any limited or technical sense, it is found in the interpretation which the parties themselves placed upon the contract, the plaintiff in setting up and operating its machinery upon the premises, and the defendant in allowing this to be done.

But, even if it were held that the contract contemplated mere "storage," we do not see that plaintiff's position would be helped thereby. After going into possession under the contract and placing its property upon the premises, it surely cannot be released from its agreement exempting the defendant from liability because, forsooth, it set up and operated its machinery on defendant's property, instead of merely storing it there. If this went beyond what was permitted by the contract, it was acquiesced in by the parties; and, as plaintiff was in possession under the contract, its terms should be treated as having been extended by implied consent, rather than as not covering what was done. See Davis, Director General, v. Gossett, 30 Ga. App. 576, 118 S. E. 773. It seems clear that plaintiff could not hold possession under the lease and repudiate the conditions under which possession was given, even though in the course of its possession it did something which the lease did not authorize.

Nor is there anything in the contention that the provision relied on exempts from liability only as to damage caused by fire. It will be noted that the provision of the contract is that the licensee accepts the privilege

with the understanding that the property "is subject to the risk of destruction or damage by fire set out by locomotives operated on the railroad of the railway company, *or may be otherwise damaged or destroyed, or may be stolen,* and agrees * * * that the privilege is to be used and enjoyed *solely at the risk of the licensee,* and that the railway company shall not be responsible * * * for *any such loss, injury, or damage."* (Italics ours). If the intention had been to confine the exemption of liability to damage caused by fire there would have been no occasion to use the words "or may be otherwise damaged or destroyed."

We do not think that this is a case for the application of the rule limiting the meaning of general terms after an enumeration of particulars to things of the same general class as the particularly enumerated. This is a mere rule of construction, and is applied only where no contrary intention appears. Here, however, there is no enumeration of particulars and we think, in view of the surrounding circumstances, and of the express provision in the contract that the privilege accorded by the lease was to be enjoyed solely at the risk of the licensee, that it was unquestionably the intention of the parties to exempt defendant from liability for damage from other causes as well as from fire. For cases where the railroad has been held to have been exempted from liability for damage from causes other than fire where the clauses relied on were very similar to the one relied on here, see Hearn v. Central of Ga. Ry. Co., 22 Ga. App. 1, 95 S. E. 368; Osgood v. Central Vermont R. Co., 77 Vt. 334, 60 A. 137, 70 L. R. A. 930.

For the reasons stated, we think that there was error in not directing a verdict for the defendant.

Reversed.