## John L. Humbard Construction Company v. City of Middlesboro.

(Decided February 27, 1931.)

CHARLES A. WOOD and BLAKEY, DAVIS & LEWIS for appellant.

LOW & BRYANT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming in part and reversing in part.

The John L. Humbard Construction Company built and paved a number of streets in the city of Middlesboro pursuant to an ordinance adopted on April 12, 1920, by the governing authorities of the city. After the work had been completed, it was accepted by the city, and the cost thereof, including the cost of the intersections, was apportioned and assessed against the abutting property. Some of these abutters did not pay, and the construction company sued the city, these abutters, and their lienholders to enforce the collection of the apportionments. Divers defenses were interposed, and after they had all been adversely disposed of, these abutters on March 30, 1929, filed an amended answer by which they sought to make still another defense, that is, they sought to show the city had no authority to assess the cost of the intersections against them because it had, so they alleged, within ten years before this work was ordered adopted a plan by which the city paid the cost of paving the intersections. The trial court upheld this plea and ordered a reapportionment and reassessment, relieving the abutting property of the cost of the intersections, and the construction company has appealed.

Previous to the amendment of the charter of cities of the third class, by act of March 7, 1916, see chapter 10, page 28, of Acts of 1916, those cities had no power to impose upon abutting property the cost of construct-

ing street intersections. By this amendment these cities got that power, and Middlesboro on May 22, 1916, adopted a general ordinance on the subject of street improvement wherein it was provided:

"Cost of such improvement shall be paid by assessment of a special or local tax on the abutting lots and parcels of land in the manner provided by law, the city paying no part of the cost of the street improvements."

The streets involved in this controversy were constructed under an ordinance containing this provision:

"That the improvement and construction of said parts of said streets including the intersections thereof, be made at the exclusive cost of the owners of real estate abutting on such improvements to be apportioned among and assessed upon the lots or parcels of real estate abutting on each of said streets and said improvements according to the number of front or abutting feet."

There was a stipulation filed that the city in 1916 and 1917 had constructed certain streets, nine blocks all told, under ordinances under which the intersections were paid for by the city. We give here some excerpts from this stipulation:

"All the above streets have since been reconstructed with Kentucky Rock Asphalt surface in accordance with ordinances passed in 1919, or later, under which the intersections were assessed against the abutting property, and these assessments have been paid by the abutting property owners."

"Beginning with 1919, there have been constructed not less than fifteen miles of permanent type streets and alleys, either of reinforced concrete, Kentucky Rock Asphalt on a concrete base, or Kentucky Rock Asphalt on a macadam base, under ordinances all of which provided that the cost of the intersections as well as the rest of the street, should be assessed against the abutting property and they have been so assessed, and most of these assessments have been paid, this litigation being the first time any contest as to the validity of such assessment of the intersections has been made."

"The total assessments levied against the abutting property for the permanent street improve-

ments made beginning with the year 1919, all of which, as above set out included assessments for the intersections amount to more than $900,000.00.''

The question involved is: After the city had on May 22, 1916, by a general ordinance adopted the plan of constructing and paving its streets and the intersections thereof at the exclusive cost of the abutting property, has it done anything to prevent it from building and improving these streets and intersections and charging the cost thereof to the abutting property?

That this general ordinance of May 22, 1916, has not been specifically and directly repealed is admitted, but it is contended by the appellees it has been repealed by implication. In Board of Councilmen of the City of Frankfort v. Morris, 200 Ky. 59, 252 S. W. 142, it was held that after such a general ordinance (adopting a plan) had been passed, the city authorities could repeal or change it at any time within the 10-year period unless some streets had been constructed under it. In that case the general ordinance was directly and specifically repealed.

In City of Princeton v. Baker, 225 Ky. 219, 7 S. W. (2d) 1042, we held such an ordinance under such circumstances could be repealed, by implication, by the adoption of an ordinance providing for the construction of streets upon a different plan. There is but one way this plan of May 22, 1916, can be changed, and that is by the repeal of that ordinance.

An ordinance may be repealed in two ways: Expressly, as by a positive expression of intention so to do in the repealing ordinance, and impliedly, as by subsequent valid legislation on the same subject incompatible with the existing ordinance. It is agreed this ordinance has not been expressly repealed, so our question is: Has it been impliedly repealed?

To show this it was incumbent on the appellees to plead and prove every fact necessary to show such implied repeal, for the courts do not take judicial notice of the ordinances of third class cities. When ordinances of such cities are relied on, they must be plead and proven like any other facts. 21 R. C. L. p. 444, n. 3.

Where one asserts the provisions of an ordinance repeal by implication the provisions of an earlier ordinance, he would very much assist the court if he should in his pleading either set out totidem verbis the ordinances themselves, or else should set out the general pro-

visions of the ordinances and file with and as a part of his pleading copies of the ordinances. Somewhere he should put into the record the ordinances themselves. If the ordinances themselves in full do not appear, the presumption will be parts not appearing, explained or removed the apparent inconsistency between what does appear and the former ordinance, the repeal of which by implication is asserted. After this ordinance of May 22, 1916, was passed, it was until repealed just as binding upon this city council as a provision of our statutes or a provision of the state or federal Constitution. See Fineran v. Central Bithulithic Paving Co., 116 Ky. 495, 76 S. W. 415, 25 Ky. Law Rep. 876, 3 Ann. Cas. 741. So long as it remained upon the books it must be obeyed. It requires an action just as formal and no fewer steps to repeal an ordinance as to enact one. If this ordinance was ever repealed, the burden was on the defendants to show that, by setting out in full detail when and how that was done. They should plead and prove the ordinances by which this repeal was accomplished together with their enactment with just as much particularity and detail as they would have to prove the contents and execution of any private paper upon which they might have relied as a defense, for Kentucky courts take no judicial notice of the acts and proceedings of city councils except those stated in section 2775, Ky. Stats., or as otherwise provided by statute. See McQuillan, Municipal Corporations, vol. 2, p. 997, sec. 903; Lucker v. Commonwealth, 67 Ky. (4 Bush) 440.

We have not overlooked a stipulation alleged to have been made October 8, 1928, an alleged copy of which is in the back of the brief for the appellees (the defendants below); and in considering this case we have proceeded as though the execution of that stipulation had been duly established and it was duly shown to be a part of this record.

There were two questions presented to the court: (a) What did the governing authorities of the city of Widdlesboro do after the passage of the ordinance of May 22, 1916? That was a question of fact about which the parties could stipulate and the court is bound by the stipulated facts. (b) What was the effect of what those governing authorities did? That was a question of law, and the court is not bound by the stipulations of the parties as to that effect. The rights of these litigants must be determined by the law as made or unmade by the duly constituted legislative authorities, not by stipulation of

litigants. Fougera & Co. v. City of New York, 224 N. Y. 269, 120 N. E. 642, 1 A. L. R. 1467.

They stipulate an ordinance was passed July 6, 1916, that certain streets were improved thereunder, and that this ordinance provided the cost of the improvement should be charged against the abutting property, "except the intersections which as a matter of fact, were paid by the city."

That an ordinance was passed August 21, 1916, and certain streets improved under it, at the exclusive cost of the abutting property, "except the intersections and as a matter of fact the city paid for those."

The Legislature in 1916 (see page 30, sec. 2 of chapter 10, acts of that year) amended the charter of cities of the third class by inserting the following therein, together with other provisions with which we are not now concerned:

> "The improvement of public ways and side-walks (including curbing and guttering), except as hereinafter provided, shall be made at the exclusive cost of the owners of real estate abutting on such improvement, to be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvement according to the number of front or abutting feet . . . The city may pay the cost of the improvement of intersections with other public ways . . . or it may assess the cost thereof against the property abutting on the street or way or part thereof ordered improved. . . . The Common Council, or said Board of Commissioners of any city of the third class, may provide by general ordinance that such city shall pay part, and if so, what part of the cost of the improvement of the streets, alleys, or other public ways (excluding side-walks) of such city. When such provision is made, it shall be uniform and shall thereafter apply to the improvement of all streets, alleys and public ways in the city (excluding sidewalks), and such general provision shall not thereafter be changed or repealed except at intervals of ten years or more." See section 3450, Ky. Stats.

From this it will be seen the charter of this city imposes the whole cost of improvements such as these including the intersections upon the abutting property

unless the city may by a general ordinance provide otherwise.

The Legislature evidently felt there was urgent need for this, for this act carried an emergency clause and went into effect March 7, 1916. The same Legislature amended the charter of cities of the fourth class by inserting similar provision. See section 3563, Ky. Stats. No one can mistake the meaning of the act; The city of Middlesboro correctly understood it, and on May 22, 1916, enacted the general ordinance quoted above, whereby it adopted the plan of imposing upon the abutting property owners the cost of constructing both the streets and the intersections. That then became the fixed policy of the city. To change that policy the city should proceed in the same way and by the same character of ordinance as it did to adopt it. It could of course, if its governing authorities deemed that policy unwise, and before any streets were constructed thereunder, change that policy by another general ordinance covering the same subject.

In July, 1916, this city had ordered no streets constructed under any ordinance following the plan outlined in this general ordinance, and it did then by these ordinances of July 6th and August 21st order certain streets constructed, upon an alleged plan under which the city paid for the intersections. There were nine blocks paved under contracts made in 1916; four of these, however, were paved under an ordinance passed in 1915, and eliminating them we have left only five blocks paved under ordinances passed after the adoption of the general ordinance of May 22, 1916, and by which, the city having paid for the intersections, defendants contend the general ordinance was impliedly repealed.

The object of the Legislature in amending these city charters was to prevent favoritism and to equalize as near as may be the benefits and burdens of municipal government. We are persuaded the words, ''provide by general ordinance,'' were used advisedly and purposely. The Legislature intended and endeavored to provide that the city should determine its policy and adopt its plan for street improvement at a time, and by a general ordinance adopted, when it did not have immediately before its governing authorities a project for the construction of any particular street or streets. The Legislature could just as easily have said the city could, in the first

ordinance for street construction thereafter adopted, fix a policy and adopt it providing the part of the cost the city shall pay, but it provided otherwise. Therefore the city must proceed otherwise. It must proceed as its charter directs. It was clearly the purpose of the Legislature to have this policy fixed and this plan adopted when the minds of the city's governing authorities were not distraught by the details of any particular project, the particular type of paving to be used, the width, length, and thickness to be used or the way the property of any individual member of its governing authorities, or his friends or family might be affected thereby. It must proceed in the same way to change it. We must give effect to this evident purpose of the Legislature and must hold such a general ordinance is not impliedly repealed by the adoption by the city of an ordinance ordering streets improved upon a different plan unless the quantity of work ordered is so large as to be quite a substantial part of its streets. The quantity of work involved in the five blocks built under contracts let in 1916 is so little as to be negligible, the general ordinance of May 22, 1916, was not impliedly repealed by the ordinances ordering these five blocks constructed, and if timely action had been taken the abutting property on these five blocks could have been subjected to the payment of the cost of the intersections there involved. Hence it follows the court erred in ordering a reapportionment of the cost of these streets. The judgment is reversed, with directions to enter a judgment awarding to the plaintiff liens on these properties for the apportionment as originally made and sued on and directing sales in satisfaction thereof.

Involved in this appeal is a lien asserted by plaintiff against the property of Mrs. Lelia B. Gunn for the construction of a sanitary sewer. This lien the court denied plaintiff. The work done by plaintiff in the construction of this sewer was not ordered and done in the manner provided by law to put her property in lien to pay for the same and plaintiff's claim was properly denied. In so far as the judgment appealed from deals with this sanitary sewer it is affirmed; in all other respects it is reversed.

The whole court sitting.