## TIPP v. DISTRICT OF COLUMBIA.
### No. 7110.

United States Court of Appeals for the District of Columbia.

Decided Jan. 23, 1939.

VINSON, Associate Justice, dissenting.

———◆———

Saul G. Lichtenberg and I. B. Feinberg, both of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and George D. Neilson, Asst. Corp. Counsel, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant was convicted in the lower court under an information which charged that he occupied public parking space contrary to the provisions of Section 19 of Article IV of the Police Regulations of the District of Columbia.[1] He contends that the judgment should be reversed because the District failed to offer in evidence the regulation upon which the prosecution was grounded and that since the court could not take judicial notice thereof it had "no law before it upon which to enter a finding of guilty."

The rule has been frequently stated that municipal ordinances, regulations and by-laws may not be judicially noticed by courts of general jurisdiction, but must be pleaded and proven as any other fact,[2] except when it is otherwise expressly provided by statute.[3] The rationale of the rule as stated in some of the cases is that such ordinances and regulations stand upon the same footing as private laws, the laws of other states and of foreign countries,[4] which must be averred and proven like other facts. But the reason for the rule fails where a municipal court is asked to notice an ordinance of the same municipality,[5] because such ordinances come within the particular and original jurisdiction of such courts,[6] and an exception to the general rule is recognized in most jurisdictions accordingly.[7] Such courts stand in the same relationship to municipal laws as do courts of general jurisdiction to public laws and,

---

[1] "That occupation of public space beyond the extent permitted by existing law or regulation, or as those laws or regulations may be amended from time to time, is hereby forbidden: Provided, however, That the customary and necessary use of such space by the occupants of abutting property in handling goods in transit is permitted during business hours only, but this permissible use shall not be construed to authorize an occupation of public space for storage purposes."

[2] District of Columbia v. Petty, 37 App.D.C. 156, 161; Richards v. Davison, 45 App.D.C. 395, 403; Garlich v. Northern Pac. R. Co., 8 Cir., 131 F. 837; Robinson v. Denver City Tramway Co., 8 Cir., 164 F. 174; Brodsky v. Fine, 263 Mass. 51, 160 N.E. 335; Hinderer v. Ann Arbor R. Co., 237 Mich. 232, 211 N.W. 734; Ex parte Wacholder, 1 Cal. App.2d 254, 36 P.2d 705; Shanfelter v. Baltimore, 80 Md. 483, 31 A. 439, 27 L.R.A. 648; Risk v. Shamrock, Tex.Civ. App., 61 S.W.2d 153; State of Vermont

v. Soragan, 40 Vt. 450; Spomer v. Allied Elec. & Fix. Co., 120 Neb. 399, 232 N.W. 767; Norfolk & P. Traction Co. v. Forrest's Adm'x, 109 Va. 658, 64 S.E. 1034.

[3] See Humbard Const. Co. v. Middlesboro, 237 Ky. 652, 36 S.W.2d 38; Alabama Lumber & Building Material Ass'n v. Mason, 230 Ala. 168, 160 So. 232; People v. Badamo, 105 Misc. 516, 173 N.Y.S. 872; Moore v. Dresden Inv. Co., 162 Wash. 289, 298 P. 465, 77 A.L.R. 1258. See also, City of Chicago v. Tearney, 187 Ill.App. 441.

[4] City of Austin v. Walton, 68 Tex. 507, 509, 5 S.W. 70, 71.

[5] Rafferty v. Court of Common Pleas, 102 N.J.L. 489, 133 A. 524; City of Wheeling v. Black, 25 W.Va. 266, 281.

[6] Incorporated Town of Scranton v. Danenbaum, 109 Iowa 95, 80 N.W. 221.

[7] Collins v. Radford, 134 Va. 518, 113 S.E. 735; Spomer v. Allied Elec. & Fix. Co., 120 Neb. 399, 232 N.W. 767; Bateman v. Atlanta, 51 Ga.App. 10, 179 S.

consequently, as to them, the local ordinances are the peculiar law of the forum.[8] There is nothing to the contrary in District of Columbia v. Petty, 37 App.D.C. 156, relied upon by appellant. Section 22, Title 9, D.C.Code, 1929, upon which he also relies, provides a method of proving municipal ordinances and regulations under conditions and in courts in which such proof must be made. It does not require such proof under the circumstances of the present case.

The reason of the rule which requires a municipal court to take judicial notice of a regulation of the same municipality applies with equal force to a court invested with full original jurisdiction to enforce such regulations, even though it may have jurisdiction to enforce other laws as well.[9] The lower court was invested by Congress with original jurisdiction "of all offenses against municipal ordinances and regulations in force in the District of Columbia."[10] The fact that it was also given original jurisdiction of other offenses does not alter the fact that it functioned in the present case as a municipal court specially charged with original jurisdiction of offenses arising under the regulation in question; hence that it had judicial knowledge thereof.[11]

Appellant's contention that because it was created by Congress the Police Court of the District of Columbia is a United States court and not a municipal court is without merit.[12] It is neither exclusively a United States court nor exclusively a municipal court but a hybrid exercising the functions of both. It has original jurisdiction, subject to a few exceptions, concurrently with the District Court, of all crimes and offenses committed in the District of Columbia "not capital or otherwise infamous and not punishable by imprisonment in the penitentiary * * *."[13] In this respect it is a court of the United States, although not a constitutional one.[14] On the other hand, when it acts in the exercise of its jurisdiction "of all offenses against municipal ordinances and regulations in force in the District of Columbia",[15] it possesses all the attributes and essential characteristics of a municipal court or a justice of the peace court, which it was intended to supersede.[16]

■ Appellant's next contention is that he was improperly convicted, under the facts of the case, because he came within the exception of the regulation which permits "the customary and necessary use of such [public] space by the occupants of abutting property in handling goods in transit * * * during business hours only * * *." The evidence is uncontradicted that the use which appellant made of the public space was during business hours only. There seems to be no dispute also that the use consisted of a continuous process of unloading paper from trucks onto a pile which occupied the public space, and

---

E. 403; Steiner v. State of Nebraska, 78 Neb. 147, 110 N.W. 723; City of Milbank v. Cronlokken, 29 S.D. 46, 135 N.W. 711, Ann.Cas.1914C, 1231; State v. Fulco, 135 La. 269, 65 So. 239; Portland v. Yick, 44 Ore. 439, 75 P. 706, 102 Am. St.Rep. 633; Byer v. Harris, 77 N.J.L. 304, 72 A. 138.

[8] Ex parte Davis, 115 Cal. 445, 47 P. 258; Taylor v. Sandersville, 118 Ga. 63, 44 S.E. 845; Incorporated Town of Scranton v. Danenbaum, supra note 6; State v. Fulco, supra note 7; Foley v. State of Nebraska, 42 Neb. 233, 60 N.W. 574; West v. Columbus, 20 Kan. 633; Information against Oliver, 21 S.C. 318, 323, 53 Am.Rep. 681.

[9] Ex parte A. J. Hansen, 158 Cal. 494, 497, 111 P. 528, 529.

[10] D.C.Code (1929) tit. 18, § 152.

[11] See People v. Quider, 172 Mich. 280, 287–288, 137 N.W. 546, 548.

[12] The District of Columbia is a municipal corporation without legislative powers, its function being confined to mere administration. See Metropolitan R. Co. v. District of Columbia, 132 U.S. 1, 4 et seq., 10 S.Ct. 19, 33 L.Ed. 231, where the governmental history of the District is exhaustively outlined by the Supreme Court. Congress, the creator of the municipality, is the sole legislator and exercises general control. It is the only body which may establish its courts and enact regulations to be enforced by them, although the latter function may be delegated to the Commissioners. See also, District of Columbia v. Tyrrell, 41 App. D.C. 463, 471–472; Coughlin v. District of Columbia, 25 App.D.C. 251; Newman v. Willard's Hotel Co., 47 App.D.C. 323.

[13] D.C.Code (1929) tit. 18, § 152. See Palmer v. Lenovitz, 35 App.D.C. 303.

[14] See Huyler's v. Houston, 41 App.D.C. 452; Green v. Peak, 62 App.D.C. 176, 65 F.2d 809; United States v. Mills, 11 App.D.C. 500, 506.

[15] D.C.Code (1929) tit. 18, § 152; United States ex rel. Morris v. Scott, 25 App. D.C. 88.

[16] See United States v. Mills, 11 App. D.C. 500, 507.

a similarly continuous process of moving the paper from the pile into appellant's building. Consequently, although from moment to moment the pile consisted of different paper, nevertheless the space was continuously occupied by a pile of paper. As one of appellant's witnesses described the situation: " * * * the pile was continuously being added to and taken away from in the process of his business."

The question is whether this constituted "an occupation of public space for storage purposes."[17] In our view it did. The definition of the word storage, for which appellant contends, is a type of *dead* storage in which goods come to rest for safe keeping. The cases upon which he relies refer to that type of storage.[18] But *live* storage is equally well known to this modern age; examples of which are to be found in the storage of automobiles in daily use.[19]

The *customary* and *necessary* use of public space by business people, their clients, customers and friends may be a considerable one, just as may be a similar use of the public street, in front of a place of business, for "handling goods in transit." Perhaps even a greater use of the public space may be justified, than of the public street, for such purposes. To this extent the right and privileges of other members of the public may be appropriately cut down. But somewhere, short of the point of sole occupation and exclusive use, the rights and privileges of the rest of the public must be recognized. Appellant's occupation of the public space during business hours, being a continuous one, appropriated it to his sole use. So far as the other members of the public were concerned, the space was as effectually deprived of its public character during business hours as if it had been used for dead storage. That, in our view, is what the regulation is designed to prevent.

We have carefully considered all of appellant's assignments and contentions and find them to be without merit.

Affirmed.

VINSON, Associate Justice (dissenting).

Tipp, the appellant, was charged and convicted of violation of Section 19, Article IV of the Police Regulations of the District of Columbia. The regulation reads as follows: "Sec. 19. That occupation of public space beyond the extent permitted by existing law or regulation, or as those laws or regulations may be amended from time to time, is hereby forbidden: Provided, however, That the customary and necessary use of such space by the occupants of abutting property in handling goods in transit is permitted during business hours only, but this permissible use shall not be construed to authorize an occupation of public space for storage purposes."

I quote all the evidence in the record. Sergeant Walrodt, of the Metropolitan Police, testified that "on the 4th day of November, 1937, he observed *a pile of paper about 4 feet wide and 8 feet long* against the building at New Jersey Avenue and N Streets, S.E., where the defendant conducts a junk shop; that he never had the place under observation *for any great length of time* but that when he did observe the premises there was a pile of paper on public space adjoining the building; that he did not know whether the pile of paper that he saw from one time to another was composed of the same identical paper and *that he did not know how long such identical paper* may have remained in that location. However, a pile of paper occupied this space everytime he observed it." [Italics supplied.]

The record states that "Officer J. M. Sine testified substantially as Sergeant Walrodt had testified" and, in addition thereto, the following: "This witness when asked whether or not he knew if the merchandise or paper, which he observed, was ever stored in the space it occupied, he answered that he did not know; but that he believed that *the pile* which he observed, *was not continuously the same identical paper,* because he also observed employees putting the paper into the building, as well as additional paper being dumped on the pile." [Italics supplied.]

For the appellant, Walter Koons testified "that between the hours of about 10:00 a. m. and 2:00 p. m. trucks were continuously unloading their merchandise in front of the premises in question and in public space adjoining the defendant's building;

---

[17] D.C.Police Regulations, Art. IV, § 19.

[18] Roberto v. Schmadeke, 180 App.Div. 143, 167 N.Y.S. 397; Monroe v. Greenhoe, 54 Mich. 9, 19 N.W. 569.

[19] Hogan v. O'Brien, 123 Misc. 865, 206 N.Y.S. 831; cf. Southern R. Co. v. Stearns Bros., Inc., 4 Cir., 28 F.2d 560, 562; Wright v. Louisiana Ice & Utilities Co., 14 La.App. 621, 129 So. 436, 439.

that after the merchandise was unloaded into the pile, it was weighted and taken into the building; that sometimes there were as many as four or five trucks unloading at the same time and that *any particular merchandise* that was unloaded from the trucks *never remained in the pile* in front of the building *for a period longer than 5 or 10 minutes,* since the pile was continuously being added to and taken away from in the process of his business; that after this paper was unloaded onto the pile, it was taken from the pile and put into a bailer; that the bailer is working continuously from opening time in the morning until closing time in the evening; and no merchandise was ever left out side of the building after the close of business for the day." [Italics supplied.]

It was agreed that two other witnesses would testify substantially as the witness Koons.

I do not think that the evidence either warranted, or can now sustain, a conviction. The language of the regulation is plain. The testimony is clear, and without contradiction. Under the express language of the regulation "the customary and necessary use of such space by the occupants of abutting property in handling goods in transit during business hours only" is permitted. True, this right of use is followed by limiting language that "this permissible use shall not be construed to authorize an occupation of public space for storage purposes."

The majority opinion admits that the appellant made use of a public space during "business hours only". Seemingly, it admits that the appellant was engaged "in handling goods in transit". In any event, I consider it so to be. However, the majority opinion holds that this method of handling goods in transit "constituted 'an occupation of public space for storage purposes.'" Distinguishing between *"dead* storage" and *"live* storage", it admits that it is not *"dead* storage", but defines it to be

*"live* storage". I do not think that it is storage at all.

The majority opinion shows a very proper concern for the rights of other members of the public in the use of the public space. Although the record does not disclose the manner in which they might desire or could legally use it, it is not essential as the question here involved is whether the appellant violated the law in his use of it. It should be understood that the particular public space does not involve the obstruction of the sidewalk for pedestrian use; it is the land situate between the building occupied by the appellant and the edge of the sidewalk nearest to the building.

The majority opinion states that "appellant's occupation of the public space during business hours, being a continuous one, appropriated it to his sole use." The record, in my opinion, does not warrant such conclusion, unless the business hours of this junk dealer were from 10:00 a. m to 2:00 p. m. However, if the appellant, during business hours, did make use of the public space in the manner shown by the record, in my opinion, he did not violate the law. I see no langauge that would prohibit continuous use by the occupants of the abutting property in handling goods in transit during business hours.

The courts are not the instrumentality of government to amend the regulation and further limit the right of abutting property owners to the use of such public space.

The proviso was inserted in the regulation to preserve and protect the occupants of property abutting public space in the right of ingress and egress. Deprivation of such rights not only could seriously affect the established business of an occupant, but would materially affect the value of the property itself. The regulation recognized such practical consideration and, in my opinion, intended the use of the public space as the appellant used it. I feel the judgment of the lower court should be reversed.