**BURKE  v.  UNITED STATES.**

No. 1439.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 1, 1954.

Decided March 12, 1954.

West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Harry L. Walker and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

■ Appellant was charged, by information filed in the Juvenile Court, with nonsupport of his wife and minor children. The information covered the period from September 12, 1952, until December 23, 1952, the date on which it was filed. On January 13, 1953, appellant pleaded guilty. He was placed on probation until January 22 when the court ordered him imprisoned for one year, the maximum sentence authorized by the applicable statute. Code 1951, § 22–903. The information under which appellant was sentenced was fatally defective, since it omitted the word "wilfully," a part of the statutory definition of nonsupport.[1] On that account, in May 1953, while appellant was in prison, the government filed a new information charging him with nonsupport from September 12, 1952, until May 21, 1953. Five days later, on motion of government counsel, appellant's commitment was set aside and the first case was dismissed. On the same day appellant was brought into court and again waived counsel and pleaded guilty. He was sentenced once more to imprisonment for a year; sentence was suspended, and he was placed on probation. On July 24, 1953, probation was revoked and a one-year sentence was again imposed. Approximately two months later appellant filed a motion to vacate sentence on the ground that he had twice been placed in jeopardy for the same crime. He invoked the protection of 28 U.S.C. § 2255 (Supp. V, 1952). The court denied the motion (which the government had not answered) without a hearing and without appointing counsel, although appellant had in his mo-

Melvin M. Feldman, Washington, D. C. (appointed by this court), for appellant.

Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., with whom Vernon E.

1. This court has held the word "wilfully" to be essential. Seidenberg v. United States, D.C.Mun.App., 97 A.2d 463.

tion requested that counsel be appointed to represent him.

Defendant then filed in his own behalf a notice of appeal in which he set out that he was without funds to prosecute the appeal and asked that counsel be appointed to represent him. We appointed Mr. Melvin M. Feldman of the Legal Aid staff of the D. C. Bar Association, and his brief and argument reflect painstaking industry in the protection of appellant's rights. He has presented several interesting and substantial claims of error.

■ Government counsel take the position that the United States Code gave the Juvenile Court no right to hear the motion to vacate and that this court has no jurisdiction to review the action taken thereon. The question is whether the Juvenile Court of the District of Columbia may be considered "a court established by Act of Congress", under the cited section of the United States Code, and whether as such it was empowered to entertain a motion to vacate a sentence. We set out in the margin the parts of the United States Code section here pertinent.[2] Originally it applied to "court[s] of the United States," but in 1949 it was amended so as to apply to courts "established by Act of Congress."[3] This change was made in order to conform the terminology to that used in 28 U.S.C. § 1651 (Supp. V, 1952),[4] and to make it clear that the section applied to federal district courts in the territories and possessions.[5]

■ We think it is clear beyond question that the section as originally enacted did not apply to the Juvenile Court. "Court of the United States" is defined by 28 U.S.C. § 451 (Supp. V, 1952) to include courts created by Act of Congress, the judges of which hold office during good behavior. Since judges of the Juvenile Court are appointed for a term of six years,[6] that court is not by such test a court of the United States.[7] Nor did Congress, in amending the section, evidence any intent to include the Juvenile Court in its application. United States district courts of the territories and possessions were specifically mentioned in the committee report accompanying the legislation, but no reference was made to the Juvenile Court.[8] Moreover, it clearly appears from the committee reports that Congress regarded the change in section 2255 as purely a matter of language conformity and did not intend to make any

2. "§ 2255. *Federal custody; remedies on motion attacking sentence*

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The section provides that such a motion may be made "at any time" and also provides: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."

3. Act of May 24, 1949, § 114, 63 Stat. 105.

4. Section 1651 authorizes courts established by Act of Congress to issue writs necessary to their jurisdiction.

5. H.R.Rep.No.352, 81st Cong., 1st Sess. (1949), 2 U. S. Code Congressional Service (1949), p. 1272.

6. Code 1951, § 11–920.

7. The same result has been reached in regard to the Municipal Court with respect to section 2201 (Declaratory Judgment): Branson v. Harris, D.C.Mun.App., 100 A. 2d 38; and with respect to matters arising under former statutes: Tipp v. District of Columbia, 69 App.D.C. 400, 102 F.2d 264.

8. Nor, parenthetically, was any reference made to the Municipal Court, our only other local court with limited criminal jurisdiction.

change in, or to enlarge the substantive scope of the section.[9]

Many years ago in United States v. Mills, 11 App.D.C. 500, a similar question was raised regarding the District of Columbia Police Court (consolidated by Congress with the Municipal Court in 1942, D.C.Code 1951, § 11–751 et seq.). That tribunal, like the Juvenile Court, owed its existence to congressional enactment. There was a dispute as to the jurisdiction of the United States Commissioner over a defendant who in default in payment of a fine had been imprisoned by the Police Court. The appeals court posed the question in this language: "Whether the Police Court of the District of Columbia is one of the courts of the United States whose sentences are intended to be included within the provisions of Sections 1042 and 5296 of the Revised Statutes of the United States [18 U.S.C. § 3569] relative to the discharge of poor convicts unable to pay the fines imposed upon them, after they have been in prison for thirty days for the nonpayment of such fines." United States v. Mills, supra, 11 App.D.C. at page 503. Answering the question in the negative the court held that though the Police Court was in one sense a court of the United States, that fact did not necessarily make applicable to it all laws enacted for the courts of the United States.

Appellant relies on Green v. Peak, 62 App.D.C. 176, 65 F.2d 809, 811. That case is readily and clearly distinguishable. It involved a violation of the National Prohibition Act, 27 U.S.C.A. § 1 et seq., and the question was whether the defendant' was entitled to relief as provided by the Indigent Prisoners' Act, which by its terms applied only to prisoners *sentenced by a*

*United States court.* One of the important facts there was that under an act national in scope denial of the relief sought would result in the imposition of longer sentences in the Police Court than in the United States District Court. The court held that such an anomaly was not intended by Congress. But, referring to the Mills decision the court concluded its opinion thus: "* * * of course we do not now hold that * * * the present Indigent Prisoners' Act, has any application in such a matter [a prosecution for larceny] or to the *local jurisdiction* of the police court *under local statutes* or municipal regulations." (Emphasis added.)

▬▬▬ Though in nonsupport cases the jurisdiction of the Juvenile Court is concurrent with that of the District Court, it is obvious that it was a "local statute" which defined the offense and fixed the punishment; hence the procedure for vacating judgment is not governed by the United States Code.

But it by no means follows that defendants imprisoned by a District of Columbia court are without a remedy, or have no right by motion or petition to seek at the hands of the sentencing court a vacation or correction of the sentence. At common law, and prior to the enactment of section 2255, the power of trial courts to modify or vacate sentences was well established.[10] Generally this control was held to end with the term at which sentence was entered,[11] and in the present case the motion was filed in a later term.[12] But in 1941 the Supreme Court held that the proper remedy of one imprisoned under consecutive sentences, the second of which was alleged to be void, was "to apply for vacation of the sentence and a resentence in conformity to the statute

9. Sen.Rep.No.303, 81st Cong., 1st Sess. (1949), H.R.Rep.No.352, 81st Cong., 1st Sess. (1949), 2 U. S. Code Congressional Service (1949), p. 1254 et seq.

10. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354; Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872; Basset v. United States, 9 Wall. 38, 19 L.Ed. 548.

11. United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; Gilmore v. United

States, 8 Cir., 131 F.2d 873, and cases cited therein.

12. Code 1951, § 11–905 provides that the Juvenile Court "shall hold a term on the first Monday of every month * * *." Appellant's motion was filed more than four months after sentence was pronounced, and more than two months after suspension was revoked and he was imprisoned under it.

under which he was adjudged guilty." Holiday v. Johnston, 313 U.S. 342, 349, 550, 61 S.Ct. 1015, 1017, 85 L.Ed. 1392. This was said despite the fact that the term at which the prisoner had been sentenced had long since expired.

Following that ruling there has been wide recognition and exercise of the power of United States district courts to vacate sentences void in whole or in part, even after the term had expired.[13] Indeed, section 2255 has been held to represent Congressional recognition of and clarification of the power.[14]

■■ We think the Juvenile Court, following the Holiday decision, may properly entertain a motion to vacate a sentence partially or totally void, after the expiration of the term at which it was entered. Like the power to grant new trials,[15] the authority of the Juvenile Court to vacate sentence may be regarded as inherent and there is no reason why the decisions of higher federal courts and of the Supreme Court, recognizing, defining or extending the limits of this type of remedy should not furnish a guide for Juvenile Court action. That the power has been codified as to federal courts does not operate to divest the Juvenile Court of its authority. On the contrary, the jurisdiction of the Juvenile Court in this respect remains as it existed before the federal statute (section 2255) was enacted.

While there may have been some confusion before section 2255 as to the situations in which motions to vacate could be filed after term,[16] we need not, for the purposes of the present case, attempt to resolve any conflicts, or to define comprehensively the scope of the relief. It is sufficient to say that relief has been afforded in analogous situations, and that general precepts of justice and orderly and accepted procedures warrant, in the District of Columbia courts, the consideration of motions of the type here under discussion. There seems to be no bar to the promulgation of procedural rules on this subject, either by the Juvenile Court or by the Municipal Court.

Motions to vacate were most frequently filed where a sentence was alleged to be in excess of the statutory maximum,[17] or where consecutive sentences were entered upon plural counts of an indictment charging but one crime,[18] so that only a reduction of sentence was effected if relief were granted. In Waldron v. United States, 6 Cir., 146 F.2d 145, however, the sentence was entirely void and the prisoner released. There defendant had pleaded guilty to an indictment drawn under a statute creating a presumption which the Supreme Court subsequently declared unconstitutional. On appeal from the district court's denial of his motion to vacate, filed a year after sentence, the court of appeals treated the case as one involving imprisonment under an unconstitutional statute, and held, 146 F.2d 147: "In this case, there seems no reason for any distinction between the power of a district court to vacate a judgment that

13. Peeler v. United States, 10 Cir., 163 F.2d 823; United States v. Lynch, 7 Cir., 159 F.2d 198; Lucas v. United States, 4 Cir., 158 F.2d 865, certiorari denied 330 U.S. 841, 67 S.Ct. 977, 91 L.Ed. 1287; Waldron v. United States, 6 Cir., 146 F.2d 145; Carrollo v. United States, 8 Cir., 141 F.2d 997; Bowen v. United States, 5 Cir., 134 F.2d 845, certiorari denied 319 U.S. 764, 63 S.Ct. 1320, 87 L. Ed. 1714.

14. Kahl v. United States, 10 Cir., 204 F.2d 864.

15. Young v. Hesse, 58 App.D.C. 362, 30 F.2d 986.

16. For some of the rulings on motions to vacate or correct sentence, see, in addition to cases cited in note 13, supra, the following: United States v. Moore, 7 Cir., 166 F.2d 102, certiorari denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772; Bauman v. United States, 5 Cir., 156 F.2d 534; Bozel v. United States, 6 Cir., 139 F.2d 153, certiorari denied 321 U.S. 800, 64 S.Ct. 937, 88 L.Ed. 1087; Gilmore v. United States, supra, note 11, and cases collected therein.

17. Peeler v. United States, supra, note 13; United States v. Lynch, supra, note 13.

18. Wilson v. United States, 9 Cir., 145 F.2d 734; Bozel v. United States, supra, note 16.

is partly valid and partly void, and the power to vacate a judgment that, on the record, and the conceded facts, was, in its entirety, founded upon the unconstitutional provisions of a statute, by virtue of which appellant is now imprisoned." The court then quoted from and relied on United States v. Weil, D.C.E.D.Ark., 46 F.Supp. 323, 326, where it was stated: " * * * counsel for the government contends that the Court was without jurisdiction to enter its order * * * which vacated the judgment, for the reason the term had lapsed, and cite cases in support of this contention. But these cases do not apply in a situation where the judgment is void on its face and an inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment. The old inflexible rules of the common law should not and cannot be adhered to where human rights and liberties are endangered, especially rights and liberties guaranteed by the Constitution of the United States. Furthermore the defendant in this case was a pauper, he was in prison, and it is incumbent upon the courts to use any extraordinary remedies at their command to see that his rights and liberties are protected."

We think the instant case is comparable to the Waldron case. It is unimportant that there a conviction under the unconstitutional provision of a statute was presented, while here the basis for appellant's motion is the charge of double jeopardy, for in both cases the defect is apparent from the record and conceded facts. No attempt was made here to present a constitutional question dehors the record, determinable in habeas corpus proceedings.[19]

■ ▪ Therefore, we turn to the merits of appellant's claim. He first argues that the corporation counsel of the District of Columbia had neither the right nor the power to prosecute this action on behalf of the United States. His position is that the information charged a crime against the United States, and that the corporation counsel may only prosecute crimes in the name of the District of Columbia. It is well established, however, that all crimes committed in the District (except violations of municipal ordinances or regulations, and penal statutes in the nature thereof) are crimes against the United States.[20] It is also admitted that the corporation counsel is authorized by Code 1951, 11–932 to prosecute non-support cases in the Juvenile Court. Consequently, it is apparent that appellant's point is merely technical—whether the prosecuting entity was correctly named. This involves no substantial right; appellant makes no claim that he was injured by the alleged misnomer, as such, and therefore we need not consider whether the procedure was proper.[21]

Much more serious is appellant's second point: his claim that he has twice been sentenced for the same offense contrary to the double jeopardy provision of the Fifth Amendment. It cannot be disputed that the informations here involved both charged appellant with the act or acts of non-support during the same period of time. The second information did not charge a separate offense merely because it included, in addition to the period covered by the first, the time since the first information was filed.

Government counsel contends that jeopardy does not attach except upon a valid information, and that since the first information was invalid, appellant was never put in jeopardy under it. It has been held that a valid information is a prerequisite to the attaching of jeopardy, but the cases so holding involve situations where the information or indictment is dismissed *on motion of accused,* or before judgment on the merits and service of sentence.[22] Here we have an entirely different situation. Judg-

19. See McIntosh v. Pescor, 6 Cir., 175 F. 2d 95; Lockhart v. United States, 6 Cir., 136 F.2d 122.

20. United States v. Cella, 37 App.D.C. 433, certiorari denied 223 U.S. 728, 32 S.Ct. 526, 56 L.Ed. 633.

21. Nelson v. United States, 60 App.D.C. 323, 53 F.2d 935.

22. Haugen v. United States, 9 Cir., 153 F.2d 850; Amrine v. Times, 10 Cir., 131 F.2d 827; Wolkoff v. United States, 6 Cir., 84 F.2d 17.

ment was entered in the first case on appellant's plea of guilty, he served a portion of his sentence, and did not initiate the proceeding which lead to his release from custody and the ensuing resentence.

█ Whether double jeopardy may be raised in such a situation has never been decided by the Supreme Court. In Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed 300, it was held that a prisoner may not institute a proceeding to secure his release, and then on a subsequent prosecution for the same offense, raise the defense of double jeopardy. But the Court there recognized that, even though an indictment is defective, a defendant convicted and sentenced thereon may be put in jeopardy. Consequently, we hold that appellant was put in jeopardy by the proceedings under the first information lodged against him. That information was defective, but not void. It imperfectly stated a crime over which the court had jurisdiction, and therefore could not have served as the basis for an application for a writ of habeas corpus.[23] Clearly the basis upon which the Supreme Court found jeopardy to exist in the Ball case is present here. If the constitutional prohibition is to have any effect, that jeopardy must be held to have barred the filing of the new information against appellant and the imposition of the new sentence upon him. If this were not so, prisoners would not be secure against reindictment for the same crime; indeed the way would be left open for sentences to be increased and even pyramided, and punishment prolonged because of minor irregularities in information or trial, which the

prisoner has chosen to waive. Such a procedure would make helpless pawns of defendants in criminal cases. This the courts will not permit.

█ The government makes the further contention that even if appellant was placed in double jeopardy, he waived any objections thereto by pleading guilty a second time. It is true that the right against being placed twice in jeopardy for the same crime is a personal right, and may be waived, either expressly or by implication. A waiver may be implied from a plea of guilty, or from failure to bring the defense to the attention of the trial court, and therefore, it has been said that double jeopardy cannot serve as the basis for a collateral attack on the sentence, either by habeas corpus or by motion to vacate.[24] But whether there has been a waiver depends upon all the circumstances of the case.[25] "A waiver involves the intentional relinquishment or abandonment of a known right or privilege. A strong presumption is raised against the waiver of fundamental rights by an accused. His constitutional rights are jealously and vigilantly guarded."[26] The circumstances of the present case would not justify a ruling that appellant waived his right not to be placed in jeopardy a second time. He had no part in the proceeding leading to his release, rearrest and resentence, but was, on the same day, brought from prison into court, presented with a charge of crime, required to plead thereto, and sentenced, all without the assistance of counsel. In these circumstances, even if it were shown (which it is not), that appellant possessed sufficient

23. Blount v. Huff, 79 U.S.App.D.C. 204, 144 F.2d 21, certiorari denied 323 U.S. 787, 65 S.Ct. 276, 89 L.Ed. 628; Roberts v. Hunter, 10 Cir., 140 F.2d 38; Pyle v. Johnston, 9 Cir., 137 F.2d 869, certiorari denied 320 U.S. 793, 64 S.Ct. 203, 88 L.Ed. 478; Brown v. White, 8 Cir., 24 F.2d 392.

24. Caballero v. Hudspeth, 10 Cir., 114 F.2d 545; Bracey v. Zerbst, 10 Cir., 93 F.2d 8; Blair v. White, 8 Cir., 24 F.2d 323; Levin v. United States, 9 Cir., 5 F.2d 598, certiorari denied, 269 U.S. 562, 46 S.Ct. 21, 70 L.Ed. 412.

25. Himmelfarb v. United States, 9 Cir., 175 F.2d 924, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

26. Id., 175 F.2d at page 931.
Thus, consent of the accused to the withdrawal or discharge of the jury will not be implied in a second case, so as to prevent his raising the defense of double jeopardy, unless there is a basis in the former record for the implication. Ibid. See also, Barrett v. Bigger, 57 App.D.C. 81, 17 F.2d 669, certiorari denied 274 U.S. 752, 47 S.Ct. 765, 71 L.Ed. 1333.

legal knowledge to understand and appreciate the danger of his position, he certainly had no time or opportunity to formulate an intelligent opinion, or to present it to the court in an intelligent fashion. Hence it would be pure legalistic formalism, and highly unrealistic as well, to say that appellant waived his constitutional right.

We must rule that the Juvenile Court committed error when it failed to appoint counsel to represent appellant as requested in his motion to vacate, and to grant a hearing on that motion. The motion raised serious constitutional and jurisdictional questions, and it was therefore the duty of the Juvenile Court to appoint counsel and grant a hearing on the motion.

Reversed and remanded, for further proceedings in accordance with the foregoing opinion.