James H. WILLIAMS, Petitioner,

v.

UNITED STATES of America, Respondent.

Misc. No. 1405.

United States Court of Appeals District of Columbia Circuit.

Oct. 24, 1960.

James H. Williams, petitioner pro se.

Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, and Nathan J. Paulson, Asst. U. S. Attys., entered appearances for respondent.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges, in Chambers.

Order

PER CURIAM.

Upon consideration of the petition for leave to prosecute an appeal in forma pauperis, and it appearing that, although counsel was appointed to represent petitioner, petitioner is not at this time represented by counsel, and the court being of the view that circum-

stances in this case regarding the withdrawal of counsel are unusual and that petitioner should have the assistance of counsel in presenting his petition, it is

Ordered by the court that a member of the bar of this court be appointed to represent petitioner and be allowed 30 days to file a memorandum in support of the petition.

BAZELON, Circuit Judge, with whom WASHINGTON, Circuit Judge, joins: On January 22, 1960, we appointed counsel to prepare a memorandum in support of the instant petition for leave to appeal in forma pauperis. Thereafter counsel sought and obtained two extensions of time, the last one expiring April 4, 1960. On that date, he filed a request for leave to withdraw from the case for the reasons set forth in the statement of our dissenting colleague. The request was granted and the petitioner was granted an extension of time to file a memorandum. Petitioner thereupon filed a motion seeking, *inter alia,* the appointment of new counsel, which was denied on July 15, 1960, by the writer, as acting Chief Judge. In this motion petitioner charged that previous counsel interviewed him at the jail on March 29, 1960, for only 15 minutes, stating that he was too busy to present petitioner's case properly and advising petitioner to apply for parole.

Chief Judge Prettyman requested previous counsel to respond to these charges. Only after two such requests were made by letters of May 18 and July 18, 1960, and a telephone call on September 6, 1960, did counsel respond by letter on September 6, 1960, in which he set forth the basis for his denial of petitioner's assertions.

As to the circumstances of the interview, it appears that, on Sunday, April 3—the day before the expiration of the extended time for filing a memorandum in this court—counsel signed in at the jail at 12:55 p. m., and signed out at 2:00 p. m. But it does not appear how much of that one hour and five minutes was consumed by jail procedures in locating and bringing the petitioner to meet with counsel. Counsel does not specifically state how long the interview of petitioner actually lasted. Nor does counsel state whether he previously devoted any time to studying or investigating the case. The fact that the memorandum was due to be filed on the day following the interview suggests, at least, that counsel may have predetermined that no study or investigation would be required after the interview. In any event, the lapse of over seventy days after counsel's appointment before interviewing the petitioner, and the lapse of almost four months before responding to the Chief Judge are hardly reassuring evidence of diligence.

In light of these circumstances we are without sufficient assurance that petitioner has received the assistance of counsel contemplated by the Supreme Court's decision in Ellis v. United States, 1958, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed. 2d 1060. We are therefore constrained to grant petitioner's request to appoint new counsel to assist him in presenting his petition for leave to appeal in forma pauperis in this court.

BURGER, Circuit Judge (dissenting).

I dissent from the action of the majority because it is simply an effort to have a third court appointed lawyer to try to find what his predecessor reported was non-existent (if that lawyer is to be believed), namely a non-frivolous question for appellate review. Since this is essentially a factual matter, a recital of the pertinent facts and memoranda now before us is in order.

A jury found petitioner guilty of robbery. After sentence was imposed, trial counsel withdrew from the case and the District Judge denied an appeal at government expense and certified the grounds raised were frivolous. The pro se petition filed with the District Court and now before us asserts four errors in the trial: (1) failure to grant acquittal at conclusion of evidence; (2) verdict contrary to evidence; (3) defendant denied his request for witnesses;

(4) defendant denied effective assistance of counsel.

In accordance with our practice in such cases as this [1] we deferred action on the petition for an appeal at public expense and appointed counsel to file a memorandum in support of petitioner's claimed errors. Counsel so appointed secured several extensions of time to file his memorandum and finally filed a motion on April 4, 1960 (the last day permitted under an extension order), supplemented by two later letters in more detail. Taken together, these papers disclose to us that when counsel interviewed the petitioner, the latter gave the following information, according to counsel:

(a) that he, petitioner, had not testified at his trial for the reason that counsel advised him not to take the stand because of his prior criminal record, including burglary. However, petitioner now stated he wanted a new trial so he could testify.

(b) that a lame leg had prevented him from running from the scene of the crime, and that he could not prove a claimed alibi that he was elsewhere at the time of the crime.

(c) that he had no regular employment at the time of the crime and explained the money found on his person shortly after the robbery as having been given to him by his brother, but he insisted that counsel not talk to the brother.

(d) that since the robbery victim was no longer available to testify against him, a new trial, if obtained, would result in dismissal for want of evidence.[2]

(e) Counsel's statement to us includes an *emphatic* denial that he had devoted only 10 or 15 minutes to a jail conference and asserts that he was at the jail for slightly over one hour [3] "for the purpose of interviewing Mr. Williams." Counsel also stated:

"I believed then, and I believe now, that I could not in good conscience present an appeal for the purpose of obtaining a new trial, in the light of the foregoing facts. I stated so orally at the time I requested permission to withdraw as counsel. My belief then, as well as now, was and is that the appeal was motivated only by the belief held by Mr. Williams that in the absence of the complaining witness, he would be released. I could not, therefore, represent him, and accordingly, requested permission to withdraw.

"At no time did I tell him that I was too busy to present his case properly. The fact is, I was of the belief that he had no case to present."

Counsel's report to us also categorically denies he told petitioner he was too busy to take his case. That counsel should have been more prompt in performing the assignment which he accepted there

---

1. We appoint counsel to assist us because a pro se petition often affords an inadequate basis for decision by us. We have two things in mind at that stage: (1) that counsel's memorandum will demonstrate at least a plausible basis warranting expenditure of public funds for a transcript and other expense, incidental to an appeal, or (2) counsel will find there is no merit or substance to the case and will state that he desires to withdraw. In that event we allow him to withdraw and either inform the prisoner he can proceed without counsel or we may decide to deny a free appeal.

2. The correctness of petitioner's view of the law that the death or absence of the

complaining witness, whose testimony is already recorded in the first trial, is not material; however, petitioner's utterance ought to weigh in our consideration of whether petitioner should have another lawyer appointed to act for him.

3. Counsel states: "'The interview took place at the District Jail. The records there show that I was there from 12:55 P.M. to 2 P.M., E.S.T., an elapsed time of 1:05, *for the purpose of interviewing* Mr. Williams.'

"In point of fact I was at the jail *for the stated purpose* for one hour and five minutes, *and not the 10 minutes.* * * *" (Emphasis added.)

is no doubt, but he has explained, first that illness accounted for part of the delay and second that press of his own practice kept him occupied. On this record I am not able to say that giving private clients and pre-existing professional obligations priority constitutes such "lack of diligence," as the majority suggests, that appointment of new counsel is imperative.

I am unwilling to ask the members of our bar, especially the younger men who look to the courts for guidance on ethical standards, to stultify or prostitute themselves by our pressing them, in circumstances like those presented here, to search out some technical basis for reversal in the face of what has been reported to us. Here there is a total absence of any suggestion or claim that the petitioner is innocent or that an injustice has been done.

As I see it, the appointment of a second counsel in these circumstances is not only a clear violation of our general rule or policy that second counsel will not be appointed unless unusual circumstances appear indicating that failure to do so may lead to a miscarriage of justice, but also a violation of sound principles of administration of the criminal law. To appoint yet another counsel at this stage, which will be third counsel appointed by the courts at no expense to petitioner, will inevitably have the effect of encouraging indigent prisoners to "shop around" until they can find counsel to do their bidding. Indeed this case may well give to the bar the impression that this court engages in a "shopping process" until we find a lawyer who tells us what the prisoner, rather than the lawyer, believes about the merits of the appeal. Paid counsel ought not do this; it would be intolerable if court appointed counsel should come to believe that is what this court expects of them. Appointing counsel to "monitor" the work of other counsel ought to be approached with more care.

There is yet another important consideration. If the report of counsel appointed by this court is true or substantially true, then this is plainly not a case to consume the time of another lawyer and thus absorb, uselessly, one more of the very limited number of lawyers available to handle the increasing number of free appeals in this court.

Only if we assume that counsel's belated report to us is not a faithful report of what he was told by the petitioner could there possibly be any basis for devoting further legal or judicial time to this case. If the facts have not been faithfully reported, this court should promptly institute disciplinary proceedings against such counsel. Absent that, the majority action is groundless, and without directly saying so accepts petitioner's allegations and rejects what has been stated to us by an officer of the court.