Frank A. TATE, Appellant,

v.

UNITED STATES of America,
Appellee.

Robert M. EDELIN, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19177, 19556.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 19, 1965.

Decided March 28, 1966.

Mr. Richard A. Baenen, Washington, D. C. (appointed by this court), for appellant in No. 19177.

Mr. John D. Hawke, Jr., Washington, D. C. (appointed by this court), for appellant in No. 19556.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., for appellee. Mr. John C. Conliff, Jr., U. S. Atty., at the time the brief was filed, was on the brief for appellee in No. 19177. Mr. David G. Bress, U. S. Atty., was on the brief for appellee in No. 19556. Mr. Allen M. Palmer, Asst. U. S. Atty., also entered an appearance

for appellee in No. 19177. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee in No. 19556.

Before WRIGHT, TAMM and LEVEN-THAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

In these two cases we granted appellants' petitions for leave to appeal from decisions by the District of Columbia Court of Appeals (D. C. Court of Appeals). That court withdrew leave to appeal *in forma pauperis* from judgments of the Court of General Sessions (General Sessions) in prosecutions brought by the United States, and withdrew appointments of counsel in connection therewith.

These cases present important questions with respect to the handling of *in forma pauperis* appeals in the D. C. Court of Appeals. We shall first outline the facts of each case, then discuss the general principles pertinent to the questions raised by the cases, and finally dispose of these appeals in the light of the principles adduced. We make clear at the outset that we confine our discussion to prosecutions brought by and in the name of the United States.

I

*Edelin v. United States*, No. 19556: While he was under arrest on a false pretenses charge, appellant's home was searched by the police pursuant to a search warrant authorizing seizure of a check writing machine and blank payroll checks, the proceeds of the crime with which appellant was charged. What the police found and seized, however, were a hypodermic needle and a silver spoon wrapped in a brown silk stocking. The false pretenses charges were dropped, and appellant was instead charged by information in the Court of General Sessions with possessing narcotics in violation of D.C.Code § 33–402(a). The trial judge denied his motion to suppress the evidence. After a trial without a jury, recorded by a court reporter, at which appellant was represented by retained counsel, he was found guilty and sentenced to 360 days, with 180 days suspended.

On April 21, 1965, the D. C. Court of Appeals granted appellant leave to appeal *in forma pauperis*, and appointed new counsel to represent him. This attorney submitted a "report" to the court on April 28, 1965. This set forth the chronology of the case in the trial court. Counsel related that on April 26 he had both telephoned appellant's trial counsel, who advised that without funds he would not represent appellant further, and discussed the case with the prosecutor (whom he described as courteous, fair-minded and cooperative), and that on April 27 he had consulted with appellant in the rear of the U. S. Branch of General Sessions. He set forth:

The appellant stated to the undersigned that he had the following complaints:

(a) Ineffective Counsel, in that the Attorney did not make the proper motions.

(b) Unfair conviction, since he is a drug addict.

(c) Judge denied appellant's motions.

(d) No proof that appellant was in possession of narcotics.

Counsel's report sets forth a two-paragraph conclusion.[1] This report barely takes cognizance of the issues in this case, cites no cases, and lacks any real analysis of the issues (e. g. whether the objects seized were contraband or instru-

---

1. The conclusion to the report of Edelin's appointed counsel reads as follows:

There appears to be no basis to support appellant's contention that he was ineffectively represented. On the contrary, it appears that the trial attorney was called upon to make decisions and did make such decisions vigorously and effectively as competent counsel may be expected to make. The Appellant himself stated that counsel did make and argue motions to suppress the evidence, which the Judge overruled. Counsel did argue that the Appellant was not in control of the room at the time of search by the police, hence

mentalities of crime, seizable without a warrant, or merely evidence of crime). The final conclusion was that "investigation FAILS to establish the denial of a fair and impartial trial to the appellant."

On the same day, April 28, the D. C. Court of Appeals granted appointed counsel leave to withdraw from the case and revoked its permission to appellant to proceed on appeal *in forma pauperis*. In a subsequent "Show Cause Order," filed *pro se* on May 3, appellant inquired why appointed counsel, who allegedly told appellant during their conversation that the points of law appellant raised were unfamiliar to him and would require research, devoted less than one day to his case (before submitting his report to the court), and why appointed counsel did not "seek to review the transcript of the trial for errors, instead of [asking] appellant for his *layman's* opinion of what points and etc. were raised at the trial." On June 15, the Clerk belatedly sent appellant a copy of counsel's report, reproached him for his "temerity" in inquiring why he was denied leave to proceed *in forma pauperis*, stated that the order was based on the attorney's report, and that "there will be no action on the irregular Show Cause proceeding."

*Tate v. United States*, No. 19177: On July 2, 1964, appellant, represented by court-appointed counsel, pleaded guilty in the Court of General Sessions to charges in three informations filed against him that day—for possession of narcotics, D.C.Code § 33–402(a), narcotics vagrancy, D.C.Code § 33–416a, and petit larceny, D.C.Code § 22–2202. The court imposed consecutive sentences for the three offenses, totalling 720 days.

On July 16, 1964, appellant filed a *pro se* motion to vacate his sentence on the ground that his guilty pleas were involuntary because he was suffering at the time from the effects of narcotics withdrawal. New counsel was appointed to represent appellant on this motion, and a hearing was held on July 28. The motion was denied by the court without opinion, findings of fact, or conclusions of law. No appeal was taken.

On September 18, 1964, appellant, again acting *pro se*, filed a motion for rehearing of the motion to set aside his pleas of guilty. He alleged that counsel appointed to represent him on that motion had not subpoenaed witnesses and documents which would have supported his allegation that the plea was involuntary. This motion was denied summarily.

On September 25, appellant filed his notice of appeal. The D. C. Court of Appeals granted leave to appeal *in forma pauperis* from the judgments of conviction [2] and appointed counsel to represent appellant.

the appellant should not be convicted. However, the father of the appellant on *cross examination* stated that the room was the appellant's—the room was occupied by someone else, but not at the time in question. The fact that the result of the trial was adverse to the appellant, gives no ground for the COURT to undertake an appraisal of the qualities, strategies which a trial attorney presents. Furthermore, because of the attorney's conviction that a Narcotics Addict was a mentally ill individual and not criminally responsible, he requested a mental examination, as indicated in the chronology. The appellant did not take the stand to testify because as appellant told me, he has had prior convictions. The appellant had every opportunity to be heard.

There being no evidence that the findings of such trier of facts on April 8, 1965 were *contrary to the credible weight* of testimony and evidence, it is RESPECTFULLY represented to this HONORABLE COURT that investigation FAILS to establish the denial of a fair and impartial trial to the appellant.

We note, without comment, that many of the phrases in appointed counsel's conclusion to his report to the D. C. Court of Appeals in this case are identical to those employed by counsel in a similar report in Bond v. United States, D.C.Circuit No. 19281, a case pending before this court. [123 U.S.App.D.C. ——, 360 F.2d 504.]

2. The D. C. Court of Appeals was apparently willing to consider the appeal from the conviction as being timely be-

Appointed counsel filed his report to the court on December 1, 1964, two months after he had been appointed. He stated that there was nothing for the court to review, at least for the time being, on the issue of voluntariness *vel non* of the guilty pleas, since that was an issue of fact which had been determined against appellant by the trial court after hearing and testimony. He recommended, however, that the court retain jurisdiction over the appeal while remanding the case to General Sessions for a hearing on the issue of ineffective assistance of counsel at the July 28 hearing on the motion to vacate for involuntariness of the guilty plea, and if necessary further hearing on the motion to vacate itself. The D. C. Court of Appeals declined to remand as suggested. It revoked appellant's leave to appeal *in forma pauperis*, and withdrew appointment of counsel "for the reason that it appears that the motions to vacate were denied after full hearing, that the motions for reconsideration presented no new matter, and that the record discloses no basis for an appeal."

The "record" before the D. C. Court of Appeals and this court contains no transcripts of any of the proceedings. Apparently none of the proceedings was recorded by a court reporter.[3] Nor does that "record" contain any statement of proceedings and evidence with respect to either the July 2 proceedings on appellant's guilty pleas, or the July 28 hearing on the motion to vacate sentence.

## II

We consider for the first time the standards applicable to the conduct and decision of *in forma pauperis* appeals in the D. C. Court of Appeals. There is concurrent criminal jurisdiction in the District of Columbia in cases other than felonies. The United States District Court for the District of Columbia has original jurisdiction of all "offenses committed within the District" with certain exceptions not here material. D.C.Code § 11–521(a) (Supp. V. 1966). The Court of General Sessions has original jurisdiction, concurrently with the District Court, of offenses punishable by fine only or by imprisonment for one year or less. D.C.Code § 11–963(a) (Supp. V. 1966). We are not here concerned with offenses against municipal ordinances, which are prosecuted in General Sessions by the District of Columbia.[4] We are concerned with prosecutions by and in the name of the United States, and these are prosecutions for serious crimes, whether technically for violations of the United States Code or the District of Columbia Code. The United States Attorney, it was admitted on oral argument, has prosecutorial discretion in many cases whether to prosecute the defendant in the District Court or the Court of General Sessions.

With respect to appeals by indigent defendants who are prosecuted by the United States in the Court of General Sessions, two sets of problems fraught with constitutional overtones arise: first, to what extent must opportunities and facilities on appeal be equal to those provided nonindigent defendants; and second, to what extent must those opportunities and facilities approximate those of indigent defendants appealing from District Court convictions.

cause there had been a timely notation of appellant's intention to appeal on the petit larceny information.

3. The record does not reveal whether or not appellant requested that a reporter be present at the time of the hearing on the motion to vacate sentence.

4. See D.C.Code § 23–101 (1961 ed.), providing for prosecution by the Corporation Counsel, in the name of the District of Columbia, for violation of "all police or municipal ordinances or regulations and * * * all penal statutes in the nature of police or municipal regulations, where the maximum punishment is a fine only, or imprisonment not exceeding one year." All criminal prosecutions for which punishment may be by fine *and* imprisonment are therefore brought by the United States. See United States v. Strothers, 97 U.S.App.D.C. 63, 228 F.2d 34 (1955).

■ The Supreme Court has made clear that the guiding principle governing indigent appeals in the federal courts and in states which make available appellate review is equality of treatment with paid appeals. Coppedge v. United States, 369 U.S. 438, 446–447, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Griffin v. People of State of Illinois, 351 U.S. 12, 16–17, 76 S.Ct. 585, 100 L.Ed. 891 (1956). "Both equal protection and due process emphasize the central aim of our entire judicial system —all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.' Chambers v. Florida, 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716." Griffin v. People of State of Illinois, supra, at 17, 76 S.Ct. at 590.

With respect to the states, the Supreme Court has enforced the standard of equality of treatment through decisions based on the equal protection and due process clauses of the Fourteenth Amendment. In addition to *Griffin,* supra, see Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Draper v. State of Washington, 372 U. S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); and Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

■■ In regard to indigent appeals in the federal courts, the Supreme Court has not had occasion to invoke constitutional protections. Requirements of equality of treatment with non-indigents have been predicated on 28 U.S.C. § 1915, the statute providing for *in forma pauperis* proceedings, including appeals, in "courts of the United States." [5] In a

series of decisions over the last decade, the Supreme Court has expounded the meaningful content inhering in the framework of 28 U.S.C. § 1915. In Johnson v. United States, 352 U.S. 565, 77 S. Ct. 550, 1 L.Ed.2d 593 (1957), the Court held that a transcript, or some appropriate substitute, and appointed counsel must be furnished an indigent defendant for the purpose of enabling him to demonstrate that he is entitled to appeal *in forma pauperis.* The "good faith" provision of 28 U.S.C. § 1915 requires only that a non-frivolous ground of appeal be shown to exist, as appears from *Johnson,* supra, and Farley v. United States, 354 U.S. 521, 77 S.Ct. 1371, 1 L.Ed.2d 1529 (1957). Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958), emphasized the further requirement that leave to appeal *in forma pauperis* may not be denied until the indigent appellant has had effective assistance of counsel in his search for a non-frivolous issue, and that adequate representation entails active advocacy in an adversary proceeding, and not mere impartial evaluation and advice to the court as amicus curiae. The Court said (356 U.S. at 675, 78 S.Ct. at 975):

> If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied.

In Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), the Court discussed the subject of *in forma pauperis* appeals at length, and held that the burden is on the Govern-

---

5. 28 U.S.C. § 1915(a) provides:
   Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such

costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

   An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

ment to demonstrate that any issue presented by appellant is frivolous. Finally, in Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), the Court held that a complete transcript must be made available by the Government to an indigent defendant seeking leave to appeal *in forma pauperis* who is represented by an attorney other than trial counsel. Four justices would have ruled that a complete transcript is required for all indigent appeals.

There has been much discussion before us as to whether the Court of General Sessions is a "court of the United States" within the meaning of 28 U.S.C. § 1915. The section with those words predates the 1948 revision assigning section number 1915. The 1948 revision inserted for the first time 28 U.S.C. § 451, providing that, as used in title 28, the term "court of the United States" includes certain enumerated courts "and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." [6]

If section 451 is deemed to govern the scope of section 1915, the latter section is not applicable to the Court of General Sessions, since the judges of that court are appointed for a term of ten years. And there are decisions of the D.C.Court of Appeals, or its predecessor, ruling or

indicating that one or another provision of Title 28 is inapplicable to the legislative courts in the District of Columbia.[7]

On the other hand, the Supreme Court has held that courts properly depart from the literal meaning of words when at variance with the intention of the legislature as otherwise revealed. United States v. American Trucking Associations, 310 U.S. 534, 542–543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). It is pointed out that the addition of § 451 to Title 28 in 1948 was not intended to be a change of substance, but rather only "to make possible a greater simplification in consolidation of the provisions incorporated in [that] title. * * *" H.R.Rep. No. 308, 80th Cong., 1st Sess. A52 (1947). It is suggested to us that the D. C. Court of Appeals and Court of General Sessions, or their predecessors were considered "courts of the United States" prior to 1948. See Huyler's v. Houston, 41 App. D.C. 452 (1914); Tipp v. District of Columbia, 69 App.D.C. 400, 102 F.2d 264 (1939); Green v. Peak, 62 App.D.C. 176, 65 F.2d 809 (1933). But see United States v. Mills, 11 App.D.C. 500 (1897). It is argued that prior to 1948, the predecessor of 28 U.S.C. § 1915 would have been applicable to the predecessors of General Sessions and the D.C.Court of Appeals, and that a tidying-up provision like § 451 may not fairly be read as ac-

6. The first paragraph of 28 U.S.C. § 451 presently reads:

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the United States District for the District of Puerto Rico, the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

From 1948 to 1959 the definition also specifically included the District Court of Hawaii. After statehood was granted the reference became unnecessary.

7. See Branson v. Harris, 100 A.2d 38 (Mun.Ct.App.1953), holding the Municipal Court not to be a "court of the United States" for purposes of the Declaratory Judgments Act, 28 U.S.C. § 2201; Burke v. United States, 103 A.2d 347 (Mun.Ct. App.1954), holding that 28 U.S.C. § 2255 did not apply to the Juvenile Court, even though the language of that statute had been changed so as to apply to "court(s) established by Act of Congress"; Ingols v. District of Columbia, 103 A.2d 879 (Mun.Ct.App.1954), applying the identical reasoning to the Municipal Court; Brown v. Plant, 157 A.2d 289 (Mun.Ct.App. 1960), holding that 28 U.S.C. § 1915 did not apply to the local courts and that it was hence powerless to order a transcript prepared at public expense; Blair v. District of Columbia, 200 A.2d 93 (D.C. Ct.App.1964) (dictum to same effect).

complishing a substantive turn-about that would affect basic rights.

We do not feel it necessary to determine the reach of 28 U.S.C. § 1915, for the result in these cases is the same whether or not that provision is applicable. This court has the function and responsibility of exercising supervisory powers to the end of obtaining fair administration of criminal justice within the District of Columbia. The Supreme Court outlined our duties in the exercise of that supervisory power in Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949), and Fisher v. United States, 328 U.S. 463, 476, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946). That responsibility has called forth significant rulings of this court relating to right to counsel.[8] Of particular interest in the current context is Wildeblood v. United States, 106 U.S.App.D.C. 338, 273 F.2d 73 (1959), where we held that the then Municipal Court of Appeals was required to appoint counsel to assist indigent defendants seeking to appeal convictions involving serious moral turpitude even where there was no appeal as of right because the penalty imposed was less than $50. We stated (106 U.S.App.D.C. at 340, 273 F.2d at 75):

> In exercise of our powers and responsibility in relation to the administration of justice in the courts of the District, we should give effect to the spirit of Johnson v. United States, 1957, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 and Farley v. United States, 1957, 354 U.S. 521, 77 S.Ct. 1371, 1 L.Ed.2d 1529.

Our opinion in Washington v. Clemmer, 119 U.S.App.D.C. 216, 339 F.2d 715 (1964), related to stenographic recording and transcription of preliminary hearings before the United States Commissioner.

We think that the interest of justice requires the application of the principles and spirit not only of the *Johnson* and *Farley* decisions of the Supreme Court to which we referred in *Wildeblood*, but also the subsequent Supreme Court decisions —in *Ellis, Coppedge* and *Hardy,* discussed above, and the incorporation of the substance of their requirements into the system of *in forma pauperis* appeals administered in the D.C.Court of Appeals, pursuant to Rule 43 of that court, from convictions in the United States branch of General Sessions.

■ The same fundamental considerations of fairness and equality of treatment that led Congress to set up a system of *in forma pauperis* appeals in 28 U.S.C. § 1915, that led the Supreme Court to build up a body of law giving greater meaning and vitality to the principles of equal treatment for rich and poor, that led the D.C.Court of Appeals to set up its own *in forma pauperis* system, and that led the Attorney General's Committee on Poverty and the Administration of Criminal Justice to make its cogent suggestions for improvement in access to appellate review in the federal courts,[9] lead us to take steps to ensure that indigent defendants who have been tried in the U. S. branch of the D. C. Court of General Sessions have the same rights and opportunities on appeal, as nearly as is practicable, as do non-indigent defendants in the same situation, and as do indigent defendants appealing from judgments of the United States District Court. Absolute equality is perhaps impossible in the context of the limited facilities of the local courts. Nevertheless, equal justice remains a meaningful goal, with our practical task being the minimizing, if not eliminating, of finan-

8. Most recently we noted a juvenile's right to the aid of counsel in presenting relevant information prior to any determination of the Juvenile Court to transfer the juvenile to the regular criminal courts. Black v. United States, 122 U.S.App.D.C. ——, 355 F.2d 104 (1965). An earlier ruling had declared the juvenile's right to counsel in involvement

proceedings. Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686 (1956).

9. See generally *Report of the Attorney General's Committee on Poverty and the Administration of Criminal Justice,* pp. 90–124 (1963).

cial resources as a weight in the scales of criminal justice.[10]

## III

Indigent appellants in the D. C. Court of Appeals are entitled to representation by counsel acting, pursuant to the standards of Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958), not as a passive friend of the court, but as a diligent, conscientious advocate in an adversary process. The D. C. Court of Appeals is required to enforce these standards by taking greater care than is evidenced in the two cases before us to assure that no appointed counsel is permitted to withdraw from an appeal unless he has satisfied the court that after thorough investigation of the facts of the case and research of all legal issues involved he has discovered no non-frivolous issue on which an appeal might be argued. The fact that the chances of prevailing are slim is not a reason for withdrawal, but is rather a summons to conscientious counsel to devote his professional skill and pertinacity to the most effective presentation of which he is capable.

Furthermore, as a symbolic but not insignificant procedural implementation of this approach, we are of the view that counsel should be required to file a formal motion to withdraw. The cur-

rent practice of permitting attorneys to file "reports" has overtones of the office of amicus curiae that tend to gloss over rather than highlight the affirmative aspects of the duty of court-appointed counsel to his client.

The D. C. Court of Appeals should consider taking steps to inform counsel, at the time they are appointed, of their responsibilities. We have found that a printed sheet of instructions, distributed to appointed counsel, is both helpful to counsel and easy for the court to administer.[11]

## IV

We further hold that the standards announced by the Supreme Court with respect to provision of transcripts to indigent appellants must be applied by the D. C. Court of Appeals and Court of General Sessions in all cases in which the trial court proceedings in the United States branch have been recorded by a court reporter. The principle underlying this requirement is the need for avoiding arbitrary discrimination in treatment of defendants, whether based on their resources or the court where they are tried.

Translating this requirement into specific guidelines we note that where counsel on appeal is not the same as trial counsel, a complete transcript is necessary.[12] Where counsel on appeal repre-

---

10. "One basic objective of a system of criminal appeals is * * * the establishment of procedures adequate to protect the legitimate interests of the accused irrespective of his financial status." *Id.* at 90. Compare Coppedge v. United States, 369 U.S. 438, 447, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); Griffin v. People of State of Illinois, 351 U.S. 12, 17, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

11. *The Statement to be Handed by the Clerk to Appointed Counsel,* approved by this court on December 13, 1963, apprises appointed counsel of his responsibilities and duties under the standards laid down in Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958), and in Canons 4 and 5 of the American Bar Association Canons of Professional Ethics. It makes clear the kind of showing that must be made

before counsel is permitted to withdraw, and that withdrawals will be allowed only in exceptional cases.

In addition, this court has found it useful to distribute a brief statement to indigent appellants at the time counsel is appointed, informing them of the nature of the appointed counsel system, the duties and responsibilities of their counsel, and the need for cooperation between client and counsel. Included is a specific warning that the court does not look with favor on ill-considered attempts by indigent appellants to replace appointed counsel.

12. See Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964); but see concurring opinion of Mr. Justice Goldberg, *id.* at 282, 84 S.Ct. at 428 urging that complete transcripts be provided indigents in all appeals.

sented the appellant at trial, a transcript relevant to the points of error assigned is a minimal requirement.

■ In our view D.C.Code § 11–935 (Supp. V, 1966) is soundly interpreted to authorize charging the United States for transcripts in cases prosecuted by it in the Court of General Sessions. This construction avoids serious constitutional questions, and thus discharges a time-honored responsibility of the courts.[13]

Section 11–935, which grants reporters in the Court of General Sessions authority to collect fees for transcripts, provides in part: "The court shall prescribe such rules, practice, and procedure pertaining to fees for transcripts as it deems necessary, conforming as nearly as practicable to the rules, practice, and procedure established for the United States District Court for the District of Columbia." Part of the "rules, practice and procedure" relating to fees for transcripts in force in the District Court is the following, emanating from subsection (f) of the Court Reporters' Act, 28 U.S.C. § 753 (f): "Fees for transcripts furnished in criminal or habeas corpus proceedings to persons allowed to sue, defend, or appeal *in forma pauperis* shall be paid by the United States out of money apropriated for that purpose." Although the Court

Reporters' Act does not apply in and of itself, and in all its terms, to the Court of General Sessions, this fee provision in subsection (f) is made applicable to the Court of General Sessions reporters by virtue of the mandate of D.C.Code § 11–935. It may be that the immediate purpose of § 11–935 when passed in 1947 was to equalize compensation of reporters in the then Municipal Court with that of reporters in the District Court.[14] However, it is plainly no bar to interpretation of a statute as applicable that "the question raised was not considered by the legislature,"[15] at least where the construction flows naturally from the statutory language. These considerations are all the more compelling in a case like that under discussion, where a contrary construction would force us to face constitutional questions of a serious nature and threaten the continued existence of divided criminal jurisdiction in the District of Columbia between the District Court and the Court of General Sessions.

This construction of D.C.Code § 11–935 comports with the general objective of Congress that the procedures and rights of parties in the Court of General Sessions parallel those in the District Court as closely as practicable. D.C.Code § 13–101 (Supp. V, 1966).[16] Although we

13. Construing statutes with an eye toward avoidance of constitutional issues is a technique often endorsed and employed by the Supreme Court. International Ass'n. of Machinists v. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932).

The Supreme Court has indicated that its expansive interpretation of 28 U.S.C. § 1915 to protect equal rights of indigent appellants in the federal courts has been motivated by constitutional problems lurking in the background. See Coppedge v. United States, 369 U.S. 438, 446–447, 82 S.Ct. 917, 8 L.Ed.2d 21, where the Court stated that its holdings with respect to *in forma pauperis* appeals were "impelled by considerations beyond the corners of 28 U.S.C. § 1915." For a view that the Court's holding in Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957), must in fact

have been a constitutional one, see *Note*, 58 Colum.L.Rev. 832, 848 (1958).

14. S.Rep. No. 381, 80th Cong., 1st Sess. (1947); H.R.Rep. No. 894, 80th Cong., 1st Sess. (1947).

15. Cardozo, *Nature of Judicial Process*, 15 (1921). Cf. Clemmer v. Alexander, 111 U.S.App.D.C. 189, 190–191, 295 F. 2d 176, 177–178 (1961); Eastern Air Lines, Inc. v. CAB, 122 U.S.App.D.C. 375, 379, 354 F.2d 507, 511 (1965).

16. D.C.Code § 13–101 authorizes the D. C. Court of Appeals and Court of General Sessions to promulgate rules of practice and procedure "for efficient administration of justice," and specifically provides that the civil rules adopted shall "conform as nearly as may be practicable" to the Federal Rules of Civil Procedure. Section 13–101 (d) is of special interest; it provides that "Rules adopted pursuant to this section * * * may not abridge, enlarge, or modify the substantive rights of a litigant."

were not persuaded by its reasoning, we did study the 1964 ruling of the Comptroller General, which recognized the constitutional implications but concluded that there was no authority to pay for the transcripts. Comp.Gen.Rep. B 153485, March 17, 1964. Our construction of D.C.Code § 11–935 may not properly be gainsaid on the ground that it will result in increased costs to the Government. Moreover, if no funds for transcripts were available, constitutional considerations might compel reversal of convictions and a resultant transfer of prosecutions of many indigent defendants to the U. S. District Court, at greater cost to the Government, in addition to delay, confusion, and inconvenience to court personnel, and frustration of the Congressional scheme for entrusting General Sessions with major responsibility for dispatch of this task.

Of course, a guarantee of availability of transcripts on appeal does not solve the problem of cases where no reporter is present at the trial court proceedings. The vehicle of appellate review in the D. C. Court of Appeals in cases where no transcript is available is the "statement of proceedings and evidence" prepared by trial counsel and approved by the trial judge. D.C.Ct.App.Rules 21, 23–25; [17] Young v. Tune, 172 A.2d 558 (Mun.Ct. App.1961). Such a system of review has inherent disadvantages in terms of providing an accurate record of proceedings below, as was recognized by the Municipal Court of Appeals itself in Premier Poultry Co. v. Wm. Bornstein & Sons, Inc., 61 A.2d 632, 633 (1948).[18] There may therefore be problems as to whether and to what extent this procedure satisfies the constitutional requirement that in the absence of a transcript the appellate court must be provided with a "picture" of trial proceedings reasonably equal to that provided by a transcript. Compare Draper v. State of Washington, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Griffin v. People of State of Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1956); cf. Miller v. United States, 317 U.S. 192, 198–199, 63 S.Ct. 187, 87 L.Ed. 179 (1942).

We need not consider, however, whether or how General Sessions could make do with a substitute for transcripts if the legislature had failed to provide it with reporters. The fact is that Congress has provided that court ten official court reporters. That does not provide a reporter for every judge and hence choices must be made. Rule 82(b) of the court provides that the use of an official court reporter in a case is a matter for decision of the trial judge, taking into consideration "the nature of the case, the necessity or advisability of having an official transcript, and the availability of an official court reporter." Traditionally preference has been given to civil litigation in making use of the court's limited reportorial resources. In our view preference must be given to criminal proceedings, at least where prosecuted by the United States. These are not petty offenses, but serious crimes, though classified as misdemeanors. The manifest concern of Congress for improvement in the administration of criminal justice repels any supposition that Congress was ready to relegate such proceedings to second place in the allocation of the reporters for whose salaries it made appropriations. The problem is not as acute on the civil side where litigants often have the means to hire private reporters.

The Court of General Sessions may have some adjustments to work out in implementing our ruling, but they should not be insuperable. We were advised at oral argument that reporters would be

17. And see Rule 26, providing for an "agreed statement on appeal" which may be prepared and submitted by parties to be certified as the record on appeal in cases where the questions on appeal "can be determined without an examination of all the pleadings, evidence and proceedings in the trial court."

18. The court stated that one of the purposes of providing official court reporters was "to preserve a full and accurate record of proceedings * * * in preference to the less satisfactory form of narrative statement based on the memory of court and counsel and their notes."

provided by the United Planning Organization (UPO), and understand that this program has been put into effect and has resulted in assignment of reporters to all proceedings in the United States and criminal jury branches. If at some future date the UPO-provided reporters are unavailable, and there is no increase in staff of court reporters, the Court of General Sessions will be called upon to administer the staff provided by Congress, perhaps with rotation, in such fashion as to assure availability of the reporters necessary daily to cover all criminal proceedings prosecuted by the United States.

## V

We now turn to disposition of the cases before us and to application therein of the principles developed above.

■■■■ In Edelin v. United States, No. 19556, the D. C. Court of Appeals erred in granting appellant's attorney leave to withdraw and in revoking permission to appellant to proceed *in forma pauperis*. Since the trial was recorded by a court reporter, and appellant was represented on appeal by a court-appointed attorney who had not represented him at trial, it was error not to have ordered a transcript of the trial prepared to enable appellant's attorney to prepare his appeal. Even apart from this, we think it improper for the court to have allowed counsel to withdraw and to have revoked leave to appeal *in forma pauperis* on the basis of the conclusory statements in counsel's "report" to the effect that no non-frivolous issue existed. Appellant did not receive adequate representation by counsel acting as his advocate under the standards of Ellis v. United States. See also Williams v. United States, 109 U.S.App.D.C. 18, 283 F.2d 382 (1960). We reverse the judgment of the D. C. Court of Appeals and remand with instructions that new counsel be appointed to represent appellant and that the court order preparation of a transcript of the trial at the expense of the United States.

■■■ In Tate v. United States, No. 19177, the order of the D. C. Court of Appeals withdrawing appointment of counsel on appeal and withdrawing leave to appeal *in forma pauperis* also cannot stand. On this record we cannot say whether the D. C. Court of Appeals should have done what it did, or should have allowed the appeal, or should have followed the recommendation of appellant's court-appointed attorney that it remand the case for a hearing on his allegations that witnesses had been available to substantiate his claim, of narcotics withdrawal, underlying his contention that his guilty pleas had not been voluntarily given. No transcript was made of the hearing held on appellant's motion to vacate sentence, and apparently no court reporter was present at that hearing.

No statement of proceedings and evidence was made for purposes of the appeal. In the absence of such a statement, we cannot see how appellant could be effectively represented, or how the D. C. Court of Appeals could meaningfully consider his appeal, especially in view of the fact that the trial judge made no findings of fact or conclusions of law and wrote no opinion in support of his decision, after hearing, to deny the motion to vacate sentence. In view of the long lapse of time since the hearing we think it appropriate that the case be remanded to the Court of General Sessions for a new hearing on the motion to vacate sentence, with new counsel appointed to represent appellant.

These cases are reversed and remanded to the D. C. Court of Appeals with the following instructions:

In No. 19556, counsel is to be appointed to represent appellant on his appeal and a transcript of the trial is to be prepared at the expense of the United States.

In No. 19177, the case is to be remanded to the Court of General Sessions with instructions to appoint counsel to represent appellant on his motion to vacate sentence.

It is so ordered.